## BURDICK v. HEIVLY.

1. Limitation, statute of: PRESCRIPTION. A grant may be presumed from ten years' actual adverse possession and use of premises, under a claim of title.

2. —— DIVISION LINE: MISTAKE. Where adjoining owners of real estate were at a loss to know where the dividing line was, which was however finally agreed upon, and a fence erected thereon at the mutual cost of both parties, followed by actual possession and claim of ownership, which was acquiesced in for more than ten years, it was *held*, that these facts should be regarded as establishing the defense of the statute of limitations, although it appeared that the division line agreed upon was erroneous, and that the possession and claim of ownership was the result of this mistake.

3. —— PURPOSE OF THE STATUTE. One of the objects of the statute of limitations is to compose controversies growing out of mistakes and errors which tend to keep open indefinitely the settlement of titles, and render them insecure and uncertain.

*Appeal from Winneshiek County.*

SATURDAY, DECEMBER 21.

IN January, 1865, Henry T. Morse and wife quit-claimed to the plaintiff all their right, title and interest to the particular tract of land described in the petition filed in this action. At that time the land and the legal ownership thereof was occupied and claimed by the defendant. This action of right was brought to dispossess him. The defense set up is two fold:

1. That the said Morse, under whom the plaintiff claims, derived title to a tract of land by a conveyance

from one Wm. Painter and wife, who, in describing the land by metes and bounds, made one of the lines thereof 170 feet long, when only 135 feet was meant or intended. The difference in this admeasurement constitutes the strip of land in controversy, and it is claimed, that, although the plaintiff holds the legal title, it is so on account of the above mistake.

2. The statute of limitations is plead as a defense, in which it is claimed that the defendant and those under whom he claims have had uninterrupted adverse possession for more than ten years.

At the trial this last defense prevailed, and the plaintiff appeals.

*L. Bullis* and *Reuben Noble* for the appellant.

*Burdick & Patterson*, for the appellee.

Lowe, Ch. J. — Both parties claim to have derived title from a common grantor, Wm. Painter. The alleged mistake in the deed from Painter to Morse, under whom plaintiff claims, is abandoned in argument.

Whether the defense based upon the statute of limitations should prevail will depend upon the character of the possession, for the appellant distinctly admits, that the defendant, and Painter under whom he holds, had possession of the land in dispute for more than ten years, but claims, that it was the result of a mistake on the part of Painter, at least, and as his possession was not adverse in its character on that account, the statute of limitations did not run.

To determine this question, however, we must look at the evidence, the substance of which, as bearing upon this point, we will undertake to state.

First, it may be stated that the land (about four acres) was contracted to be sold by Painter to Morse, in the

year 1851, before the congressional surveys were made; afterward it was run off by a survey, and conveyed by metes and bounds. At that time Painter, the vendor, was and continued in possession, for a number of years, of the land adjoining the west line of said four-acre tract of land. After the purchase, Philip Morse, the father and agent of Henry P. Morse, the vendee, took possession of the four acres so purchased, and, in inclosing the same, built a fence on or near what he supposed was the west line of the tract, but in fact it was built some thirty or thirty-five feet east of the true west line, as called for and described in the deed; nevertheless it was treated as the division fence by Morse, who cultivated his land up to the fence on the east side, while Painter and the defendant who holds under him, occupied and cultivated their land up to the same on the west side.

How this division fence happened to be built where it was, is to be learned from the testimony of Philip Morse and William Painter.

The former says, when he came to build his fence, he looked for the stake at the south-west corner, supposing it was near Painter's, but could find no stake; he then looked some thirty or forty feet west of where the fence was finally placed and could not find a stake anywhere indicating the line; he then inquired of Painter where the same was, and that he and Painter went back where a fence had been commenced, and that they made up their minds that the line was there, and he accordingly built a fence on that line. He says, they conjectured that that was the line. They did not make any measurements to find it, nor was there any agreement about where the fence should be built.

On the other hand Painter testifies, that the division line where the fence was placed, was agreed and fixed upon by himself and Morse; that when the latter built

the fence thereon, he paid the cost of half of the same; that it was afterward treated as a division fence; that he claimed and cultivated the land up to the fence on the west side, till he sold out to the defendant, Heivly, who has claimed it since, coupled with possession.

Now, the ten years' possession being shown and conceded, the question arises whether such possession under 1. LIMITATION, the facts above disclosed was adverse, and STATUTE OF: prescription: entitles the defendant to the protection of the bar. Usually the declaration of the party, while in possession, equally with his acts, are regarded good evidence to show the quality and extent of the interest he claims. Here the defendant claimed ownership, with corresponding acts of use and occupation for more than ten years. Why may we not under such circumstances, presume a grant in his favor under the statute? The case in its facts comes within the principle and reasoning of the following cases decided by this court: *Jones* v. *Hockman*, 12 Iowa, 101; *Clagett* v. *Conlee*, 16 Id. 487; *Campbell* v. *Long*, 20 Id. 382; also that of *Ricard* v. *Williams et al.*, 7 Wheaton, 59.

Again, the above facts attending the placing of the fence at the mutual cost of both parties, show that it 2. —— division was meant and intended as the division line line: mistake. between them, and this, acquiesced in for the statutory period of ██ears, should be regarded as establishing the def this case, unless there should be some rebutting circumstances (of which we are not advised), at variance with the supposition of a grant. *Dibble* v. *Rogers*, 13 Wend. 536; *Hunt* v. *Johnson*, 19 N. Y. 279; 7 Cowen, 701–723; 7 Johns. 238–283.

But while counsel for appellant admit in argument that defendant and those under whom he claims, have for more than ten years held possession, asserting and claiming right to the whole of the premises in dispute,

yet that this possession and claim of ownership was the result of a mistake, which should have the effect of remitting the plaintiff to his full right and title to the premises, without regard to the limitation bar.

But the suggestion is unsupported by argument or authority. To our apprehension one of the objects of 3. —— purpose the statute of limitations is to compose con-of the statute. troversies growing out of mistakes and errors of this kind, which tend to keep open indefinitely the settlement of land titles, and render them more insecure and uncertain. The grounds on which the presumption of grants rest arise from the general infirmity of human nature, the difficulty of preserving the muniments of title, and the public policy of supporting long and uninterrupted possession. A very able jurist has said: "They were founded upon the consideration that the facts are such as could not, according to the ordinary course of human affairs occur, unless there was a transmission of title to, or an admission of an existing adverse title in, the party in possession."

We see no sufficient reason why the judgment should not be affirmed.

Affirmed.