Mary E. Miller, Appellant, v. Mills County, Iowa.

**Adverse Possession:** CLAIM OF TITLE: *Mistake.* Possession of an adjoining owner's land by mistake, and without intention to assert title thereto, is not adverse.

**Boundaries:** BY RECOGNITION. A division line between adjoining tracts, definitely marked by the maintenance of a fence recognized by the owners as such division line, and up to which they have cultivated the land on either side for more than ten years is the true boundary line between them.

ACQUISENCE AS EVIDENCE. Acquisence in a marked line as forming the boundary between adjoining owners furnishes some evidence that it is the true line, but its weight is somewhat dependent on the period of acquiscence.

*Appeal from Mills District Court.*—Hon. A. B. Thornell, Judge.

Thursday, May 24, 1900.

The plaintiff is the owner of the E. ½ of N. W. ¼ and the W. ½ of N. E. ¼ of section 21, township 72, range 42, Mills county; and the defendant, of the N. E. ¼ of N. E. ¼ of said section. In July, 1897, the defendant removed one hundred and eighty feet of the fence on the north end of the

boundary, recognized since 1860, from sixteen to twenty feet to the west, and took possession of the intervening strip. This is an action to eject the defendant therefrom. Trial to the court, and from a judgment dismissing her petition the plaintiff appeals.—*Reversed.*

*W. S. Lewis* and *C. E. Dean* for appellant.

*Shirley Gilliland* for appellee.

LADD, J.—Between the forties is a hedge, which previous to 1897 formed the lower part of the division fence. This was set out by the defendant's grantor, Jesse Miller, in 1867, as close as possible to the east side of a board fence which had been erected by him along the entire line in 1860. At that time the government monuments at the northeast corner of the section and at the quarter corner to the west were intact, and stakes for the division fence were set with reference to them,—whether by measurement, does not appear. The hedge was trimmed and cared for by Jesse Miller and the county, which acquired title from him for use as a poor farm, about twenty years ago since being set out, and for at least thirty-one years the land has been occupied and cultivated up to that line. The plaintiff acquired the adjoining land in 1890 from Wright, who had been in possession as owner ten years. During these eighteen years the plaintiff and her grantor maintained the north portion of the division fence,—being of board and wire,—and during that time occupied and cultivated the land up to the division line so marked. Until April, 1897, no one had questioned the correctness of the boundary as indicated by these fences, save a suggestion by plaintiff's husband that the government line was east of them. At that time the county surveyor, while doing some work on the poor farm, was induced by the superintendent and plaintiff's husband to undertake to ascertain the line according to the government survey. He testified that he did not make a survey

of the forties so as to fix all their lines and corners; that he ran a line between the sections, and though the center of section twenty-one, east and west, and then from a temporary corner, placed on the center line, run the north and south line between the forties. This was not chained, but he said: "I probably set up my instruments and took a snap shot." The superintendent testified: "We went to the southwest corner of section twenty-one, ran east to the road, then came back, running the line between Miller and other lands; then north and east to the road, and found the corner there. We then ran the line between the county's and Miller's land." The surveyor knew of no other survey, and evidently did not make use of the government field notes. It should be added that conveyances of this land and assessments have always been made by government subdivisions. In June, 1897, the defendant, through the superintendent of its farm, set the north one hundred and eighty feet of the fence to the west from sixteen to twenty feet on the line indicated by the survey, and this action was brought by the plaintiff to recover possession of the intervening strip.

I. It will be observed that the facts are not in controversy, and it may well be doubted whether a survey of this character furnishes any better evidence of the line established by the government than the location of the hedge and board fence by the parties making the division line, followed by long acquiescence therein. *Case v. Trapp,* 49 Mich. 59 (12 N. W. Rep. 908); *Tarpenning v. Cannon,* 28 Kan. 665. Indeed, it seems to be the settled doctrine in New York that the practical location and long acquiescence in a boundary line are conclusive, not on the ground that they are evidence of a parol agreement fixing it, but because they are proof that the location is correct,—of so strong a character as to preclude evidence to the contrary. *Reed v. Farr,* 35 N. Y. 113; *Baldwin v. Brown,* 16 N. Y. 364. In the last case it was said: "Acquiescence, in such cases, affords ground, not merely from inference of fact to go to the jury as evidence

of an original parol agreement, but for a direct legal inference as to the true boundary line. It is held to be proof of so conclusive a nature that a party is precluded from offering any evidence to the contrary. Unless the acquiescence has continued for a sufficient length of time to become thus conclusive, it is of no importance." It should not be overlooked that there was no government survey in that state, and the reasons which obtain in support of these decisions have not the same weight when applied to conditions in this state. However, it may be safely asserted that all the authorities agree that acquiescence in a marked line, as forming the boundary, furnishes some evidence that it is the true line; its weight depending somewhat on the period of such acquiescence.

II. But, if it be conceded that this survey tended to fix the location of the government line as originally established, it does not follow that it should be regarded as the boundary between the coterminous owners. The preliminary fact always to be ascertained in cases of this character is not the location of the line according to the government survey, but the true boundary between the adjoining properties. Until this has been done, the issue of adverse possession is not raised; for, if the fence or monuments marking the divisions between them indicate the true boundary, neither is in the occupancy of land to which the fee is in the other. Only when the boundary up to which each has been in possession is found to be erroneous, and the true line ascertained, is the character of the possession of the intervening strip the subject of inquiry. It has long been the settled doctrine of this state that when this has been proven, and such possession is by mistake, and without intention to assert title thereto beyond the true boundary, if it should turn out to be a part of the adjoining owner's land the possession is not adverse; for, in the absence of title, or color thereof, the essential element of adverse pos-

session—claim of right—is lacking. *Grube v. Wells,* 34 Iowa, 148; *Fisher v. Muecke,* 82 Iowa, 547; *Goldsborough v. Pidduck,* 87 Iowa, 599; *Skinner v. Crawford,* 54 Iowa, 119; *Wacha v. Brown,* 78 Iowa, 432; *Jordan v. Ferree,* 101 Iowa, 444. If, however, such possession, though taken by mistake, is with the intention to claim title to the division line, and thus, if necessary, acquire "title by prescription," it may ripen into title. *Fullmer v. Beck,* 105 Iowa, 518; *Doolittle v. Bailey,* 85 Iowa, 398; *Heinrichs v. Terrell,* 65 Iowa, 25. In other words, the possession of the strip of land beyond the true boundary, taken by mistake, may or may not be adverse. It is not the mistake, but the presence or absence of an intention to claim title, that fixes the character of the entry, and determines the *disseisin*. *Preble v. Railroad Co.,* 85 Me. 260 (27 Atl. Rep. 149, 21 L. R. A. 829); *Wilson v. Hunter,* 59 Ark. 626 (28 S. W. Rep. 419, 43 Am. St. Rep. 63); *Watrous v. Morrison,* 33 Fla. 261 (14 South Rep. 805, (39 Am. St. Rep. 139). The necessity of such intent is questioned by many authorities; holding that the reasons which influence the entry are not material, provided it was under claim of ownership, and continued in the belief in its rightfulness. The cases are about equally divided, and will be found collected in a note to *Finch v. Ullman* (105 Mo. Sup. 255, 16 S. W. Rep. 863, 24 Am. St. Rep. 383).

III. Under either of these rules, however, the first inquiry always is, where is the true boundary between the tracts of land? And it may be remarked that there is nothing about the government surveys entitling them to reverence. The original purpose was to enable the government to dispose of the public domain in parcels accurately defined. That they abound in mistakes is notorious, and is evidenced in the reported decisions of nearly every state save the original thirteen. Nor are the ordinary surveyors quite infallible. Their successive surveys nearly always disagree. This, aside from frequent carelessness or incompetency, is in-

evitable, from the variations of the needle, and slight differences in measurements over uneven ground. Reference is had to the government survey as pointing out the lines by which the lands described in the patents passed from the government, and by which they are ordinarily transferred by deeds. But if the coterminous owners have adopted another line as their division line, and have occupied up to it and recognized it as such for a period of ten years, there appears to be no reason for not regarding it as the true boundary line, notwithstanding it is not that fixed by the government survey. *Tracy v. Newton,* 57 Iowa, 210; *Hiatt v. Kilpatrick,* 48 Iowa, 78; *Foulke v. Stockdale,* 40 Iowa, 99. There was no express agreement between the parties to this case, or their grantors, that the fence be regarded as marking the boundary between their respective tracts of land, but the circumstances are such that an agreement ought to be implied. For more than eighteen years they have occupied up to and acquiesced in the division fence, and maintained it as the true boundary between them. They adopted it by their unmistakable acts, which in any other transaction would have all the force of implied contracts. *Davis v. Curtis,* 68 Iowa, 63. The authorities quite generally hold that, in the absence of controlling circumstances, acquiescence in a division line, assumed or established, accompanied by actual occupancy in accordance therewith by the adjoining owners for a period equal to that prescribed in the statute of limitations within which an entry may be barred, is conclusive evidence of such an agreement. The rule will be found perspicuously stated in *Sneed v. Osborn,* 25 Cal. 628: "The acts of the parties may not amount to an agreement between them to locate the tract as surveyed, and it is unnecessary to consider them in that view; but do they not show an acquiescence by the parties in those lines between the tracts of land? If they do show such acquiescence, it will make no difference in the result, that they acted in ignorance or under a mistake as to the true

northern line of the northwest quarter of the Harrison tract. The authorities are abundant to the point that when owners of adjoining lands have acquiesced for a considerable time in the location of a division line between their lands, although it may not be the true line according to the calls of the deeds, they are thereafter precluded from saying it is not the true line. The better opinion is that the considerable time mentioned must at least equal the length of time prescribed by the statute of limitations to bar a right of entry." To the same effect, see *Burris v. Fitch,* 76 Cal. 395 (18 Pac. Rep. 864); *Wingler v. Simpson,* 93 Ind. 203; *Ball v. Cox,* 7 Ind. 453; *Dyer v. Eldridge,* 136 Ind. 661 (36 N. E. Rep. 522); *Hubbard v. Stearns,* 86 Ill. 35; *Sheets v. Sweeney,* 136 Ill. 336 (26 N. E. Rep. 648); *Gilchrist v. McGee,* 9 Yerg. 455; *Diehl v. Zanger,* 39 Mich. 602; *Joyce v. Williams,* 26 Mich. 332; *Stewart v. Carleton,* 31 Mich. 270; *Berry v. Garland,* 26 N. H. 473; *Rockwell v. Adams,* 7 Cow. 761; *O'Donnell v. Penney,* 17 R. I. 164 (20 Atl. Rep. 305); *Gwynn v. Schwartz,* 32 W. Va. 487 (9 S. E. Rep. 880); *Crowell v. Beebe,* 10 Vt. 33 (33 Am. Dec. 172). See sections 4233, 4236, Code. True, there are cases holding that acquiescence for any particular time is not conclusive. See *Floyd v. Rice,* 28 Tex. 341. And others entirely ignore acquiescence as furnishing evidence of boundary. See *Davis v. Caldwell,* 107 Ala. 526 (18 South. Rep. 103); *Worcester v. Lord,* 56 Me. 265. But the great current of authority sustains our conclusion that, in the absence of other controlling circumstances, the inference is conclusive that the division line between adjoining tracts, definitely marked by the erection and maintenance of a fence or other monuments, recognized by the owners as such, and up to which they have occupied and cultivated the land on either side more than ten years,—the statutory period of limitations,—is the true boundary between them. The period adopted by the courts is evidently in analogy with the statute of limitations. See authorities collected in

4 Am. & Eng. Enc. Law, 864 *et seq.* This doctrine seems to find direct approval in *Burdick v. Heivly,* 23 Iowa, 511. It is not clear from that opinion whether the parties agreed upon the line, or merely made up their minds where it was; but the court, through Lowe, J., said. "The above facts attending the placing of the fence at the mutual cost of both parties show that it was meant and intended as a division line between them; and this, acquiesced in for the statutory period of ten years, should be regarded as establishing the defense in this case." The contention that this might be obviated by a showing of mistake was rejected. The same doctrine seems to have been applied in *Crapo v. Cameron,* 61 Iowa, 448; *Crismon v. Deck,* 84 Iowa, 349; and *Sherman v. Hastings,* 81 Iowa, 372. It is not in conflict with *Grube v. Wells,* 34 Iowa, 148, as there the adjoining owner had been in the actual occupancy but four or five years; nor with *Fisher v. Muecke,* 82 Iowa, 547, and *Goldsborough v. Pidduck,* 87 Iowa, 599, as the adjoining tracts in these cases were vacant. The duration of the occupancy is not disclosed in *Skinner v. Crawford,* 54 Iowa, 119, or *Wacha v. Brown,* 78 Iowa, 432. In *Heinz v. Cramer,* 84 Iowa, 497, the period was less than ten years. The question is stated in *Jordan v. Ferree,* 101 Iowa, 444, and disposed of by reference to the above authorities, none of which treat of long acquiescence as evidence of the location of the true boundary. From the facts appearing, it may be safely said that, as the defendants there began to improve in 1892, their actual occupancy had not equaled the statutory period of limitations. And it is well to say that *State v. Welpton,* 34 Iowa, 145, extends the doctrine of *Grube v. Wells, supra,* and like cases, so far as to entirely ignore acquiescence as affording any evidence of the true division line. But that question was given no consideration whatever; the then recent case of *Burdick v. Heivly, supra,* not being noticed. The decision, however, was distinctly overruled in *Sherman v. Hastings,* 81 Iowa, 372, though not referred to in that opinion. It

has been cited frequently with approval, but never as excluding long acquiescence as proof of the true boundary. In the above cases the issue of adverse possession, and not the location of the boundary by acquiescence, was the subject of investigation. The effect of acquiescence in a division line as evidence of the true boundary has not heretofore been touched upon, save as mentioned; and our conclusion is only in conflict with *State v. Welpton, supra,* which has been overruled, and some language contained in *Jordan v. Ferree, supra.* Such a rule tends to prevent uncertainty in division lines, and to avoid litigation resulting from the disturbance of boundaries long established. As the hedge and board fence was shown to mark the true boundary between the parties, regardless of the location of the government lines, the petition ought not to have been dismissed.— REVERSED.