CAPITAL CITY INVESTMENT Co., Appellant, v. E. L.
BURNHAM ET AL., Appellees.

**Covenants of warranty:** BREACH: RELOCATION OF BOUNDARY: EVIDENCE.
1 Plaintiff purchased a certain lot on one line of which was a
brick wall, and contends in this action for a breach of warranty
and damages, for the alleged reason that said wall is not upon
the lot line, but extends over and upon his ground, thus creating
an. incumbrance in violation of the covenants of his deed. The
evidence consisting chiefly of the testimony of a surveyor who
did not consult the original plats and monuments in making his
measurements, but accepted as correct the street curbing and lot
line as improved by various owners, is held insufficient to show
that the location of the wall was not upon the true boundary as
established by the original plat.

**Same:** PRESUMPTION AS TO LOCATION. Parties may as the result of
2 litigation, though not relied upon as an adjudication, settle
the fact that a wall is a party wall; and where this is the
effect of the litigation it will be presumed that the wall is
the true boundary between the premises, which presumption can
not be overcome except by clear and satisfactory evidence estab-
lishing another line.

**Party wall:** INCUMBRANCE:   USE OF SAME:   RECOVERY OF COST.   A
3 party wall extending onto an adjoining lot not more than nine
inches is not an incumbrance; and one who has made use of
such a wall without complaint can not recover the amount he
was required to pay for its use.

**Same:** INTENT AS TO TITLE: BOUNDARY.  The construction of a party
4 wall is both indicative of intent to hold title to the center of
the wall and, when erected without complaint of an adjoining
owner, is presumptive evidence that it is on the true line.

*Appeal from Polk District Court.*—HON. JESSE A.
MILLER, Judge.

SATURDAY, JUNE 5, 1909.

ACTION to recover damages for breach of the cove-

nants of warranty in a deed for the sale of certain real estate in the city of Des Moines. The trial court directed a verdict for defendants, and plaintiff appeals.—*Affirmed.*

*Hume & Hamilton,* for appellant.

*Clinton L. Nourse,* for appellees.

DEEMER, J.—On August 17, 1904, plaintiff purchased of defendants, E. L. Burnham and his wife, Charlotte, the S. one-third of lot 5, block C, in an addition to the city of Des Moines, and received from them a deed with the ordinary covenants of general warranty. It is claimed in the petition:

That a portion of the real estate thereby conveyed, located and described as follows, to wit: Commencing at the N. W. corner of the S. 1-3 of lot 5, block C, Commissioners' addition to Ft. Des Moines, now within the corporate limits of the city of Des Moines, Polk county, Iowa; running thence south, along the west line thereof, one foot and three inches; thence in the southeasterly direction eighty feet; thence north one foot and nine inches; and thence west, along the north line thereof, eighty feet, to the place of beginning—was, and ever since has been, occupied with a brick wall, some eighty-four feet in height above the surface of the ground and some eight feet in depth below the surface thereof. That the wall aforesaid is the south wall of the building locally known as the 'Essex Building' situated upon the N. 2-3 of said lot 5, block C, Commissioners' addition, and belonging to the owners thereof, parties to plaintiff unknown, extending over and upon and covering the trapezoid above described, and that the wall aforesaid was erected in the year 1892, and ever since has remained in the location described by and with the consent and acquiescence of the defendants. That forthwith, upon the execution of the warranty deed aforesaid, 'Exhibit A,' the plaintiff entered and took possession of the real estate thereby conveyed, with the exception of the trapezoid portion above described, but that the defend-

ants failed and refused to deliver said portion to the plaintiff and still fail and refuse so to do.

Damages are asked from defendants on account of the claimed breach of covenant in the, sum of $5,000. Defendants denied the alleged breach of warranty, pleaded that Charlotte Burnham was not responsible in any event because she joined in the deed simply to release her distributive share, and further alleged:

That, after the said deed hereinabove referred to was executed by these defendants, the plaintiff entered into the full possession of the said property and erected a brick building thereon and used the south wall of the building called the 'Essex building' in the erection of plaintiff's said brick building without the payment of any compensation therefor, and that if part of the said Essex building did rest upon the S. 1-3 of said lot 5 in block C of Commissioners' addition to Ft. Des Moines, being the property conveyed by defendant to plaintiff, the same was placed thereon by the person who erected said Essex building as a party wall, and was always treated by the several owners of said Essex building as a party wall, and was treated and used by the plaintiff as a party wall, and plaintiff is now estopped from saying that said wall was or is an incumbrance upon the property conveyed to plaintiff by these defendants.

After the testimony was fully adduced upon these issues, defendants filed a motion for a directed verdict based upon grounds which do not clearly appear in the abstract. The motion was sustained, however, on the theory that the owners of the Essex building had not obtained title to the property in dispute, that a party wall does not constitute an incumbrance, even though it extends more than nine inches over and upon a neighbor, and that the remedy, if any, in such cases, is to be determined and adjusted when use is made of the wall. It was further held by the trial court that plaintiff's cause of action, if any it

has, is against the owners of the Essex building; the thought being that plaintiff has the same remedies in this respect as his grantors would have had had they retained the title. These propositions are all challenged by appellant's counsel, and they insist that, as the wall extended more than nine inches over and upon the lot which they purchased from defendants, they are entitled to judgment for the value of the land covered by this excess in width of the party wall. They admit that a party wall is not an incumbrance, and that if it is not set over more than nine inches upon their land they have no right to recover upon the covenants in their deed, but that these matters should be adjusted with the parties who erected or own the party wall. They also claim that the wife, Charlotte, is liable on her covenants. Some other claims are made which, so far as material, will be noticed in the body of the opinion. To meet these contentions, it is insisted for appellees: That there is no evidence that the Essex building extends to any extent upon plaintiff's property; that the owners of the Essex building are not claiming title to any part of plaintiff's real estate; that, if any part of the wall extends over and upon plaintiff's property, it is by mistake, and not under claim of right or color of title; that the wall is no incumbrance; and that in no event is Charlotte Burnham liable.

Going now to the facts it appears that in the year 1891 the then owner of the N. two-thirds of lot five erected what is known as the "Essex building," the south wall of which was at or near the line between the N. two-thirds and the S. one-third of lot five. Prior to this time some of plaintiff's grantors had improved the S. one-third of the lot and placed the north wall of a building covering part of the property which was nine inches in width parallel with, but just south of, the line between the two fractions of the lot. When the Essex building was erected, the north wall of

1. COVENANTS OF warranty: breach: relocation of boundary: evidence.

the other building was incorporated into the Essex building's south wall. Due to some mistake of a surveyor, the south wall of the Essex building does not, according to plaintiff's contention, run parallel with the division line; the claim being made that it deflects to the south as it goes east. The exact claim here is that the center line of the wall of Essex building extends south to the line just one foot at the east end thereof and six inches at the west end. It is argued that this was a mistake due undoubtedly to an assumption that the wall theretofore erected upon the S. one-third of the lot was upon the true line.

After plaintiff's purchase from defendants, it decided to erect an office building upon its property, and it caused a survey to be made which it contended showed the extension of the Essex building upon their land to the extent above indicated. It went ahead and constructed its buildings and made use of the south wall of the Essex building from the basement to the height of four stories for the north wall of its building. After the building had been constructed, the Percival-Porter Co., as assignees of the owners of the Essex building, brought action against plaintiffs to this suit for the value of the wall used by it in the construction of its building, on the theory that it had joined onto and was using a party wall. Plaintiffs gave defendants notice of this suit and requested them to appear and defend or be bound by the result. They did not do so, and plaintiff in that action received judgment for $647.36 and costs. Plaintiff in this action paid this judgment with costs and attorney's fees amounting to $190. Plaintiff does not seek to recover this amount now, but does claim that by failure to appear defendants acquiesced in the line as claimed by the owners of the Essex building, and that the title to lot 5 is established by acquiescence as being where plaintiff claims it now is, and that as a matter of fact the deed from defendants calls for another and the true line which is northward of the line

established by the Essex building. It is claimed that from one foot and three inches to one foot and nine inches of plaintiff's land is taken up by the Essex building, and that defendants so acted as to estop themselves from claiming to the true line, thus depriving plaintiff of some of the property which it purchased. It is for the value of the overplus beyond the nine inches of plaintiff's land upon which the owners of the Essex building placed their wall that plaintiff seeks to recover.

To solve the question of defendant's liability, we must first determine where the true line is between the two fractions of the lot. Unless plaintiff shows by a preponderance of the testimony that he has not received all his deed calls for, he must fail in this action. According to the testimony, lot five is sixty-six and fifty-four one-hundredths feet wide north and south and the width of the S. one-third would be twenty-two and eighteen one-hundredths feet, leaving the N. two-thirds forty-four and thirty-six one-hundredths feet in width. A civil engineer testified that the south wall of the Essex building was one foot and three inches south of the north line of the S. one-third of lot five at one end, and that it was one foot and nine inches south of the line at the other end. The lot faces west on what is known as "Sixth Avenue" in the city of Des Moines. We now quote from the cross-examination of this witness as to how he made his survey:

To ascertain the location of lot 5, block C, Commissioners' addition, I measured from the curb on Grand Avenue. I measured south from this curb, determining the south line of Grand Avenue, and then measured sixty-six and fifty-four one-hundredths feet for the lot immediately north of and sixty-six and fifty-four one-hundredths for this lot, lot five. I measured from other points also— through the block on Fifth Street and also on Sixth Street to Locust Street. I made use of the curb on Locust Street for the purpose of ascertaining the location. There are monuments in some places for beginning surveys.

The bench marks are used mostly for determining the elevation. In this particular case the streets all around are paved and curbed, and have been so for a good many years; so that I assumed that these curbs, having been set by engineers when monuments were in existence, are set correctly and established the street line. Upon that basis I made the survey. I simply assumed that the curb lines were correct. I did not make any measurements for the purpose of ascertaining the correctness of the location of the curb line on Grand Avenue. I didn't go any further north than Grand Avenue. I didn't go out of block C for any measurements, that I know of. I made no measurements to any fixed monument that has been established; nothing more than the curb. I simply assumed that the curb line was correctly situated. I don't know that the curb line has been found incorrect in this case. I think there are places in the city that the curbs have been found incorrect. As to these curbs from which I measured, I did not make any independent survey for the purpose of ascertaining whether these curbs were correctly situated or not. I can think of no way at present by which that could be determined, and for that reason I did not. I did not ascertain the distance of the curb from the lot line by the city plat. I ascertained from the records the width of those streets, and then determined the position of the curb from the measurements taken between the curbs; and, after doing that, got the boundary lines of the street. Grand Avenue is sixty-six feet wide at that point. I don't recall that that is the width which is shown on the plat, but I think it is. I think I examined the plat to ascertain, but I could not recollect now that it was or was not, but I made a survey on the basis of its being sixty-six feet wide. As to how I ascertained that it was sixty-six feet wide, I say I can't recollect that I examined the plat for that particular purpose, but I think I did, and I know that measurements from the center to the south line accord exactly, or so nearly, with the improvements there thirty-three feet from the south line. I didn't go to the trouble of measuring thirty-three feet from the center to the north line. So there may be a greater distance from the center to the north line than to the south line. But I believe it is a fact it is sixty-six feet wide, but from the

center of the street south thirty-three feet is the way I determined the south line. I determined the width of the lots in block C, Commissioners' addition, from the records, the plat. The plat shows the street too, I think, and I believe I ascertained that distance, although I don't recollect now that I looked at that particular thing. I particularly looked at the lot.

I think the alley south of lot five in block C, south of this property, also the division line between Commissioners' addition and the original town. I believe Locust Street is not in the same plat as Grand Avenue. It is a fact that, in those old surveys or plats (of) Commissioners' addition to the original town of Ft. Des Moines, the actual distances, as you find them now, and measuring on the ground, are not exactly the same as the distances shown upon the plat; but they are very nearly the same. The plat that I used of Commissioners' addition shows the lots to be sixty-six and fifty-four one-hundredths feet wide. That plat is supposed to be a copy from a recorded plat in the recorder's office. I supposed it was. It is a blue print or tracing that is kept on file in the city engineer's office, supposed to be copied from these record plats; and I remember distinctly that the lots were marked sixty-six and fifty-four one hundredths. I think I made two surveys of the location for Mr. Ballard or the Capital City Investment Company, and this map that I have produced here was from my second survey. I do not recollect that, when the second survey was made, it was discovered that the first survey which I made was incorrect. I think this is the fact that Mr. Ballard called upon me to make a survey, and I sent a surveyor to do that work, and then, later, he called upon me personally to go with him and make a survey. I don't recall that there was any discrepancy in regard to the location of the Essex wall. I think that that was the cause of the second survey. The first survey, as I understand it, was the reason for discovering that the lines were marked in attempting to make their distances to the Essex wall. As I understand it, they discovered from the first survey that the Essex wall was on a portion of the S. one-third, and then, to be entirely certain, they had a second survey made from measurements taken to the wall. In locating the south side of the Essex

wall, as I got it on this plat, this measurement was taken there on the level from the alley. I suppose it would be at the level of the sidewalk. That is about my understanding of it. It was taken to the wall at the sidewalk line. I think the basement wall projected about two inches south of the wall above the basement; but, as I recalled it, this measurement was taken above the projection of the main wall and the building at the surface. That is my understanding of it. That is what I would usually do in such a case, I know. I think I did that in this case. It has been some time, but I intended to do it that way, and I think I did. As to my having a distinct recollection as to whether this measurement was made to the edge of the basement wall or to the edge of the wall above the basement, I would only say this: That I would, in locating a wall, attempt to locate the main wall at the surface. That is my general rule, and I think we did that in this case. We intended to do it. I am pretty positive that we measured to the main wall there. When I made the measurements there, I found on the S. one-third an old brick building. That old brick building, I think, was south of the wall, and I don't think we took any measurement to the wall on that. At the time I made my survey, the old brick building had been nearly all torn away. I think the north wall of that old brick building was incorporated in the wall of the Essex building. In measuring on the west line, we did not measure to the south edge of the north wall of the old brick building. We measured to the south wall of the Essex building, as we could determine it. I did not pay so much attention to the fact that the south wall of the Essex building included the north wall of this old brick building, because I knew the building had been partially torn away, and it was so we could measure through the part that had been torn away. It was torn, as I remember, below the street level, and I don't think any attention was paid to the building that was on the S. one-third; that is, the old building, that on the S. one-third of lot 5.

Another witness, nonexpert, testified as follows:

After the first survey, we let a contract to a party

to put a building there. He started in at the northwest corner of the lot and went south along Sixth Avenue, then around down the alley to the end of the lot, and then north, and, when he came there, he discovered he was not on the line with the front end of the building; that is, he discovered that the Essex building projected over onto our lot. He notified me, when we got Mr. Budd to make another survey, to see whether that was right or not, or whether he was right or not in giving us the first line. These Essex wall projections, of which I speak, were measured from the south edge of the Essex wall on the first story. The basement wall extended two inches further south than the first story. We used the entire south wall of the Essex building in constructing our building, up to the height of four stories and the basement. We connected our building with it. The center line of the Essex wall extended south on our north line just one foot at the east end of it and six inches at the west end.

The engineer also testified on cross-examination as follows:

I got the information which I had in making this survey from the blue print, of which, I believe, the original tracing is on file in the city engineer's office, and that shows the lot to be sixty-six and fifty-four one-hundredths. I do not know who made that tracing. I do not know who made the blue print that I used. There is no record, to my knowledge, in the office of the county recorder showing these dimensions. That is shown simply on some tracings or plats that are kept in the city engineer's office for the purpose of making blue prints so surveyors may use them in plattings for the dimensions. That is the usual purpose in using them. I do not know that those tracings have ever been adopted as records of the county. They are kept in the city records. I should term them part of the city engineer's office. They are public records kept there. Surveyors frequently go there to make blue prints. They are public in the sense anybody can go there to use them; that is, the memoranda are public. I have reasons to believe these dimensions of that lot are correct, and the reason I have come to that conclusion is that I measured

from the curb on Grand Avenue to the curb on Locust Street and found them to agree very closely, to a small fraction of a foot, with the dimensions in that entire block. In the block on Sixth Avenue they disagreed about forty-two one-hundredths of a foot between Grand Avenue and Locust Street. The returns that are set in the alley intersection on the east side of Sixth Avenue between Locust and Grand, here, coming from Grand Avenue, nearly accord with these dimensions, sixty-six and fifty-four one-hundredths. I did not find the original monuments or stakes that were set when these lots were surveyed. I have reason to believe the curb to be correct from the fact that it is an improvement set by the city engineer, and in setting curbs it is customary to use the utmost care in getting them placed correctly, and there may be, and there are, monuments that are in existence at the time. Frequently the pavement itself will destroy the monument. I have known cases where, through pavement and sewering, they will be taken up and the curbs themselves be left as a record of the condition of the street. I do not know when that curb was established on Grand Avenue, nor by whom it was established. I suppose it was established by the city engineer, but I do not know. I didn't look it up to see. I do not know whether the original monument was there at the time that curb was set. I do not know whether the curb has ever been changed since it was originally located. At the east line of Sixth Avenue I believe the width of Grand Avenue between curbs is forty-one and eighty-six one-hundredths. I measured it. I think the pavement was intended to be laid forty-two feet. The distance between curbs is not six inches less than it was intended to be. The difference between forty-one and eighty-six one-hundredths and forty-two feet is fourteen one-hundredths of a foot. I suppose the width of Grand Avenue was intended to be forty-two feet. Being so near, that would indicate it. I did not measure to ascertain the location of the north curb on Grand Avenue with reference to the lot lines there. The distances I measured overran slightly. I am unable to say the cause of that.

Q. The fact that you find on making surveys that the actual distances overrun those shown by the official

records is due to the fact that the chain or instrument by which the original measurements were made was incorrect? A. I can answer that question in part; that is, to say that these causes may have been the causes, and other things may have caused it. Q. Did you ever examine the plat in the city, the old part of the city of Des Moines, either Ft. Des Moines or Commissioners' addition, and make surveys upon the ground for the purpose of ascertaining whether the distances, as now ascertained by actual measurements, correspond with distances shown by the plat? A. In all surveys I think that one of the purposes is to first determine how nearly the measurements on the ground will accord with those on the plat. In this case I don't know whether I examined the records in the county recorder's office for the purpose of showing what its dimensions were according to the original survey or plat. I don't remember going there. I am sure I used the memorandum or tracings which I found in the city engineer's office as being a correct plat from the fact it accorded with conditions I found in former improvements, distances between blocks, and so forth.

Recurring now to the various transfers made by the parties, we find the following description in the chain of title to the north two-thirds of lot 5: "The north two-thirds of lot five (5) in block C of Commissioners' addition to the town of Ft. Des Moines, now included in and forming a part of the city of Des Moines, Polk County, Iowa, said premises having a frontage of forty-four (44) feet on West Sixth avenue and a depth of one hundred thirty-two (132) feet, together with a seven (7) story brick building now located thereon." It should also be stated that plaintiff here, in its answer to the claim made against it in the *Percival-Porter* case for compensation for its part of the party wall, pleaded the following matters in its answer:

That the south wall of the Essex building aforesaid is not, and never has been, a party line wall, nor can it become a wall in common under and within the meaning

and intent of the statutes of Iowa, for the following reasons, to wit: (1) For that, at the time of its erection, there was a wall on the line between the N. two-thirds and the S. one-third of said lot 5; (2) for that the thickness of said wall, above the cellar wall, exceeds eighteen inches, exclusive of the plastering; (3) for that from fifteen (15) inches to twenty-one (21) inches of the thickness of said wall, for its entire length, rests upon defendant's property; and (4) for that said wall was erected with, and still contains, many and divers windows and other openings in and through it, destroying its character and capacity as a partition wall.

Upon that issue tendered there was a judgment for plaintiff in the sum of $615.60. It should also be stated that we may have all the facts before us, that the plat of the addition in which lot five is found shows the lots to be sixty-six by one hundred and thirty-two feet and the width of Sixth Avenue to be sixty-six feet. It also shows a stone set at the southeast corner of block C at the intersection of Fifth Street with Locust.

We are impressed with the notion that the testimony of the civil engineer who made the survey of the line between the two fractions of the lot does not show that the true line is other than the one occupied by the wall between the two buildings which is now in common. He did not go to the original plats, nor to the original monuments, but accepted as correct the location of the curbing put in by the city, and the lot lines as improved by various owners. The original plat does not correspond with his survey either as to the width of streets, or lots. He went to none of the original or substituted monuments and did not go to the stone at the southeast corner of block C which was fixed on the plat as the datum point.

Moreover, in the *Percival-Porter* suit plaintiff here, defendant in that action, tendered the issue that the wall was not a party one because located upon this plaintiff's property. True that matter is not relied upon as an

adjudication, but it is to be noticed that the ·defendant in that action did not appeal, but accepted and paid the judgment rendered in that action. If the parties without litigation had settled the matter of party wall, it would have been presumed that the wall constituted the true boundary line between the premises, and so when they settle the matter by litigation the same, if not a conclusive presumption, must arise as to the true location of the boundary line. *Younker v. White,* 136 Iowa, 23.

2. SAME: presumption as to location.

Conceding arguendo that the presumption is a rebuttable one, the evidence to establish another line as the true one must be clear and satisfactory. Such testimony is not found here. We have quoted substantially all there is of it, and when taken in connection with the original plats, deeds, etc., it is not found to be of that character to justify us in reversing the action of the trial court, although this was not made the basis of his decision as shown by the oral declarations of the judge at the time of making his ruling.

Another thing must be taken into account in this connection, and that is that plaintiff in erecting its building joined onto and used the wall of the Essex building without making any claim that this wall extended over onto its property. Under our rule a party wall extending not more than nine inches over onto adjoining land is not an incumbrance. See: *Beggs v. Duling,* 102 Iowa, 13; *Bertram v. Curtis,* 31 Iowa, 46; *Thomson v. Curtis,* 28 Iowa, 229. So that in no event may plaintiff recover the amount it was called to pay out on account of having used the wall between the two buildings as one in common. If the wall extended in fact more than the nine inches allowed by statute, and there was an estoppel on the part of plaintiff's grantor to complain of this, doubtless plaintiff might recover because of breach of warranty of seisin and

3. PARTY WALL: incumbrance: use of same: recovery of cost.

possession.  That there was enough evidence to take the case to a jury on the question of estoppel or acquiescence on the part of defendant in a line other than the true one we have no doubt; but there is not sufficient testimony to show that the wall is not in fact on the true line as shown by a proper survey based upon accurate data.  Supporting the view first announced, see *Crapo v. Cameron*, 61 Iowa, 447.

The building of the wall is not only indicative of an intent to hold title at least to the center of the wall, but, when erected without complaint of the adjoining owner,

4. SAME: intent as to title: boundary.

it is strong presumptive evidence that it is on the true line.  *Miller v. Mills Co.*, 111 Iowa, 654; *Webster v. Temple*, 141 Iowa, 325.  Moreover, there was no competent testimony as to the value of the strip of land which plaintiff claims it did not get.  Our rule is established by *Mischke v. Baughn*, 52 Iowa, 528; *McDunn v. City*, 39 Iowa, 286; *Newburn v. Lucas*, 126 Iowa, 88.

We plant the decision in the case squarely upon the ground that there is not sufficient showing that the line upon which the wall stands is not the true one as established by the original plat; the survey testified to by the engineer being too uncertain to justify a disturbance of a line which is presumed to be the true one.  There is no need therefore for considering any other proposition in the case.

The result is that the judgment must be, and it is, *affirmed*.