L. C. McAVOY, Appellant, v. MILLARD F. SAUNDERS, FRANK FENTON, THE BOARD OF TOWNSHIP TRUSTEES OF CLEVELAND TOWNSHIP, Davis County, Iowa, C. H. HORN, E. D. MARTIN, and EDWARD WILSON, as composing said Board of Township Trustees.

Fences: POWER OF FENCE VIEWERS. Fence viewers have no power to establish disputed boundary lines; their authority is confined to

determining the rights and duties of the respective parties in the erection and maintenance of division fences, and to assign to each the part which he shall erect or maintain.

Same: OBLIGATION TO MAINTAIN. Where adjoining owners use a fence
2   as a partition between their lands, the obligation to maintain or contribute to its construction is not affected by the question of whether it is on the exact boundary line.

Same: BOUNDARIES: ACQUIESCENCE. The evidence in this case is
3   reviewed and held to show that the parties had acquiesced in a hedge fence, as marking the division line between their lands, for such length of time that it must be considered as marking the true boundary, and they are concluded thereby.

*Appeal from Davis District Court.*—HON. C. W. VERMILLION, Judge.

FRIDAY, OCTOBER 24, 1913.

ACTION to quiet title to a strip of land and enjoin defendants from interfering with the hedge on south line of the same and from erecting and maintaining a fence thereon. The petition was dismissed and plaintiffs appeal.—*Affirmed.*

*John F. Scarborough,* and *Tisdale & Heindel,* for appellant.

No argument for appellee.

LADD, J.—The plaintiff owns the N. W. ¼ of the N. W. ¼ of section 7, and the defendant Saunders the S. W. ¼ of the S. W. ¼ of section 6. There is a highway along the west line of the forty's, but none between them. According to the plaintiff's testimony, he erected a rail fence in 1851 from the mound and pit, marking the government corner at the northwest corner of section 7 along the section line to the east about one-half way and his father who had preempted the land from the government constructed a sod fence from the end of the rail fence to the northeast corner of the forty acres. This sod fence was dug up about forty years

ago and replaced with a rail fence. The rail fence was removed in 1880. The plaintiff had set out a hedge fence in 1868, as he says, about ten feet south of the rail fence, and later hedges were planted on either side of the north forty. These hedges did not extend to the corners, vacant spaces being left wide enough to drive through. From 1880 until 1896, the hedge appears to have been the only division fence, and whether plaintiff maintained the fence at each end of the strip between the hedge and the location of the old rail fence was in dispute. Saunders acquired his land in 1886, and claimed to have maintained fences on either side of his land down to points on the line east and west of the hedge planted by plaintiff.

In January, 1896, at plaintiff's instance, the township trustees as fence viewers, viewed the premises and made a finding "that Millard F. Saunders shall pay to L. C. McAvoy, the sum of $15 and shall receive therefor one-half of said hedge fence, and said L. C. McAvoy shall receive the east half of said hedge fence, and each party shall maintain a good and lawful fence according to the division." The costs, amounting to $10, were assessed against Saunders, who paid same with the price of one-half of the hedge. After the trustees had reached the fence, one of them, Frank Martin, inquired of the plaintiff what was the trouble, and what he wanted. The plaintiff answered that he wished "the dispute settled in regard to that partition fence. He wanted pay for one-half the fence, and he claimed the fence was on him. He said, in substance, he wanted it all settled at the same time." He then inquired of Saunders what he wanted, and the response was that "he wanted the same; he wanted the thing settled, and both said that whatever we did, they expected to be a settlement." Martin testified further that "after it was all over, Mr. L. C. McAvoy said he was satisfied," as also did Saunders. About six months later, plaintiff complained to Martin that Saunders was not keeping up the fence. Thereupon Martin examined the fence, but found it in repair.

When told of this, plaintiff said that it had been repaired since he had spoken to him. Martin then advised Saunders to "put a good fence along the hedge until the hedge was pinned down and a fence made of it." The evidence as to what was said at the meeting of the fence viewers is undisputed. Plaintiff then claimed the hedge was on his land, and Saunders was aware that the west end of it was several feet south of the section line but, according to his testimony, supposed that the east end was north of it. Though Martin supposed the fence viewers had authority to locate the division line, the other trustees did not labor under this misapprehension though Saunders testified that he said to them that he "wanted the line settled; that that was what they were there for, to settle that line and divide the fence."

Of course the fence viewers were without authority to establish or decide as to a disputed line. *Boyd v. Schoop*, 107 Iowa, 10. They might determine "by written order the obligations, rights and duties of the respective

**1. FENCES: power of fence viewers.**

parties in such matter (division fence) and assign to each owner the part which he shall erect, maintain, rebuild, trim or cut back, or pay for, and fix the value thereof, and prescribe the time within which the same shall be completed or paid for, and, in case of repair, may specify the kind of repairs to be made." Section 2356, Code. But this provision, as well as all others concerning partition fences, "applies to a fence standing wholly upon one side of the division line." Section 2366, Code.

"If parties use a fence as a partition between their farms, it is wholly immaterial whether it is

**2. SAME: obligation to maintain.**

on the exact boundary line, so far as the obligation to maintain the fence or contribute to its construction is concerned." *Card v. Dale*, 67 Iowa, 552.

After the talk with Martin, Saunders erected a wire fence from a point several feet north of the west end of the

hedge, and as plaintiff testified, immediately east of where
the government stake was located, and

3. SAME:
boundaries:
acquiescence.

extended it easterly about two hundred or
three hundred feet, and then southeasterly to
the east end of his part of the hedge, and this fence was
maintained for about nine years. It was then removed and
the hedge used as the line fence until 1909, when Saunders
caused to be constructed a woven wire fence along the north
side of the hedge, and at his instance the fence viewers
ordered the plaintiff to construct a similar fence along his
part of the division line. He erected a fence five or six feet
north of the hedge when Saunders' tenants threw it over.

It should be added that Thomas Duffield surveyed the
line between these forties more than twenty years prior to
the trial, and recollected that the hedge was in his way, and a
witness who had assisted him thought the hedge extended
across the line established. As a result of this survey, the
owners of the forties to the east of these removed their division
fence so that its west end was east of the hedge instead of
on the supposed line of the old rail fence. Such is the record,
though many of the details necessarily have been omitted,
and we are of opinion that a case was presented thereby for
the application of the doctrine of acquiescence. Even though
there was a rail and sod fence, as claimed by plaintiff, he
planted the hedge for use as a partition fence, and from 1880
until 1896 it was used as such. Plaintiff may have cultivated
the north side of the hedge for a few years, but not during the
time mentioned when the north forty was used much for pas-
ture. If cultivated, this was not done close to the line for the
hedge was not trimmed. As said, the evidence was in dispute
whether plaintiff kept up the fence immediately north of the
hedge at each end. Presumably, the trial court found for
defendant on this issue; and, as neither party is much corro-
borated, we are not inclined to disagree with such conclusion.
For sixteen years both parties treated this hedge as marking
the boundary between them, and if either thought otherwise,

is was not communicated to the other. It may be that both knew that the hedge was not on the true line, but they acquiesced in it as marking the division between them all these years, and in 1896, through the action of the trustees, Saunders had the west half of it set off to him and through payment became owner thereof. That plaintiff accepted such payment for a fence, immovable owing to its nature, instead of insisting upon the construction of a lawful fence on the line, is a strong circumstance indicating acquiescence therein as marking the division line, and when followed by occupation of each up to the same without objection thereto of any kind for thirteen years more, acquiescence seems conclusively established.

That Saunders put in a wire fence north of the hedge at the suggestion of Martin, and in part to protect the hedge when pinned down, cannot obviate this deduction, for he was in undisputed possession of the land up to the hedge, and trimmed or cut that as seemed necessary. The adjoining owners having acquiesced in and occupied up to this hedge fence as defining the boundary line for more than ten years, both are concluded from questioning its correctness. See *Miller v. Mills County*, 111 Iowa, 654, and cases following it.—*Affirmed.*

WEAVER, C. J., EVANS and PRESTON, JJ., concur.