LOVINA C. BELDING, Appellant, v. C. HUTTENLOCHER et al.,
Appellees.

ADVERSE POSSESSION: Nature and Requisites—Color of Title—
1   Claim of Right—Overhanging Eaves. The fact that a strip of
land was for more than 10 years overhung by the eaves of a bay
window works no title by adverse possession, in the absence of (a)
color of title, or (b) claim of right to possession. (Sec. 3004,
Code, 1897.)

PRINCIPLE APPLIED: A lot was 168 feet 5 inches long. Pur-
suant to divorce decree, the wife, *without reservation of any kind*,
conveyed to the husband the north 82 feet 6 inches of the lot, and
the husband, in like manner, conveyed to the wife the south 85
feet 11 inches. The eaves of the bay window on the house situated
on the wife's portion of the lot extended, but without her or her
husband's knowledge, 9 inches over the husband's south line. Three
years later, the husband sold his portion of the lot, and his grantee,
11 years later, erected a building thereon, and in so doing cut off
this 9-inch projection of the eaves of the bay window. During these
14 years, the wife's house remained as from the beginning, the
wife at no time making any claim to any of the land which she
had deeded to the husband (except in so far as such claim might
be inferred from her act in maintaining her bay window), nor did
she at any time occupy or use the *ground* overhung by the said
eaves. If she was entertaining during all this time any claim to
this overhung ground because the eaves of her house overhung it,
neither the husband nor his grantee knew of such claim. *Held*,
title in the wife to this overhung strip by adverse possession must
wholly fail, because (a) she had no color of title and (b) she had
made no claim of right to the possession of the land.

ADVERSE POSSESSION:   Evidence—"Use"—Notice of Adverse
2   Claim.   Adverse possession of real estate must be established
(a) by evidence distinct from and independent of the use, and (b)
by evidence that the party against whom the claim is made had
express notice thereof.   (Sec. 3004, Code, 1897.)

PRINCIPLE APPLIED:  See No. 1.

BOUNDARIES:  Acquiescence—Nonapplicability of Doctrine.  The
3   fact that for more than 10 years the eaves of a bay window ex-
tended some inches over an adjoining lot without the knowledge
of either lot owner that they so extended, and consequently with-

out any notice that such extension was under a claim of right, excludes all application of the doctrine of boundary lines by acquiescence.

PRINCIPLE APPLIED: See No. 1.

DIVORCE: Decree—Non-Record Stipulation—Effect. An unques-
4 tioned decree in divorce proceedings, adjusting the property rights of the parties, followed by conveyances by the parties in .compliance with the decree, supplants and merges all non-recorded stipulations of the parties with reference to property rights.

NEW TRIAL: Newly Discovered Evidence—Non-Change in Record
5 Facts. New trial will not be granted because of the discovery of an original instrument which in no wise changes the secondary evidence of its contents already appearing in the record.-

*Appeal from Polk District Court.*—HUGH BRENNAN, Judge.

SATURDAY, SEPTEMBER 23, 1916.

ACTION to quiet title and to recover damages for trespass. Decree for the defendant in the court below. Plaintiff appeals.—*Affirmed.*

*Tesdell & Mackaman,* for appellant.

*James A. Howe* and *Clark, Byers & Hutchinson,* for appellees.

GAYNOR, J.—Prior to the year 1898, Lovina C. Belding and J. W. Belding were husband and wife, and owned what is known in the record as Lot 1, Block 2, Allen's Addition to Des Moines, situated at the corner of Twelfth and Locust Streets, south of Locust and west of Twelfth. This lot was 168 feet and 5 or 6 inches on Twelfth Street. Divorce proceedings were instituted between the Beldings, which resulted in their being divorced, and a decree was entered giving to the plaintiff 85 feet 11 inches on the south end of the lot, and to her husband, J. W. Belding, 82½ feet on the north end of the lot, and, in this decree, each was

1. ADVERSE POSSESSION: nature and requisites: color of title: claim of right: overhanging eaves.

directed to convey to the other by proper instruments of conveyance so much of the property decreed to him or her, and conveyances were made accordingly.

It appears that there was a building on the property decreed to plaintiff, near the north line, all on her land, but this building had a bay window, the eaves of which extended for about 9 inches over the property conveyed to Mr. Belding. These conveyances were made in 1898, and each of these parties assumed to, and did, occupy the property so conveyed to him or her. Later, on the 27th day of April, 1901, the said J. W. Belding conveyed his interest in the north 82½ feet to the defendant Huttenlocher. On or about the 15th day of June, 1912, or immediately prior thereto, the defendant Huttenlocher, through the other defendants, undertook the erection of a building on the land purchased by him from Belding on the south line of the property purchased, and, in the erection of the building, removed a certain portion of the eaves of the dormer window of plaintiff's house, removing therefrom about 9 inches of the projection, or so much as projected over his south lot line. The north side of plaintiff's house was several inches from the south line of the portion of the lot owned by the defendant. The eaves on the north side of the dormer window on plaintiff's house extended about 9 inches over the lot line, or over defendant's line. She brings this action, claiming to be the owner of these 9 inches over which the eaves of her dormer window extended, and bases her right on the ground:

(1) That she has been in the peaceable, undisputed and adverse possession of it for more than 10 years. This possession is predicated on the thought that she had possession because of the fact that the eaves of her dormer window extended over these 9 inches.

(2) That the owners of the north portion of the lot had recognized and acquiesced in her ownership of it in that they permitted the dormer window to extend over, with knowledge of the fact that it did so extend, and that she was claiming a

right to have it so extend, and she claims that, at the time this north portion of Lot 1 was purchased by the defendant from Belding, he knew of her claim, and, knowing, acquiesced in it.

(3) She further claims that, before the decree was entered, there was a stipulation made between her and her husband touching the division of property in the event of a divorce decree, and that he was to be limited to within 9 inches of the north side of the north cottage bay window. She says, therefore, that the quitclaim deed which she made to her husband conveying to him 82½ feet is not correct, and should be reformed so as to limit the conveyance to within 9 inches of this dormer window.

Thus the plaintiff's claim, narrowed down, is that she owns 85 feet 11 inches of the south portion of the lot in controversy, by reason of the decree entered in the divorce proceedings and by reason of the conveyance made to her by her husband; that she owns 9 inches farther north on the land decreed and conveyed to her husband, because of the fact that this bay window extended 9 inches over on that portion of the lot for more than 10 years prior to the trespass on the part of the defendant complained of, and by reason of the stipulation, which will be hereafter more fully referred to.

We take up the first proposition: Did the plaintiff acquire a right to these 9 inches by adverse possession for more than 10 years prior to the trespass complained of?

In the decree entered in the divorce proceedings, she was given 85 feet 11 inches off the south end of the lot. Her husband was given 82 feet 6 inches off the north end of the lot. Each was directed to convey to the other, by proper instrument of conveyance, any right that he had in the property decreed to the other. In pursuance of this, she made a deed conveying her interest, whatever it might be, in the north 82½ feet to her husband. At that time, the building stood as it stood at the time of the trespass—the eaves extending over the dormer window as they were at the time they were

removed. When she made her conveyance of the 82½ feet off the north portion, that conveyance carried these 9 inches. It is not claimed that these 9 inches were included in the deed made by her husband to her. The fact is that these 9 inches which she now claims were included in the land conveyed by her to her husband. Never since that conveyance was made has she made any claim to any portion of the land conveyed to her husband. Therefore, even though she had actual possession of this 9 inches after the conveyance, she could not base any right to it by adverse possession, for the reason that she made no claim of right to the possession. There must be a claim as broad as the possession to ripen into adverse possession, under the rule in *Grube v. Wells*, 34 Iowa 148. Mere occupancy is not sufficient, even though it be actual occupancy. The claim of right to possession must be as broad as the possession itself, in all cases where title is claimed by adverse possession.

Moreover, the record discloses that she never made any claim to these 9 inches now in dispute, based on any actual occupancy of the surface of the ground; nor did she occupy or use the surface of the ground covered by these 9 inches. Her whole claim of right by adverse possession to these 9 inches seems to rest solely on the thought that the eaves of the dormer window on the north side of her house extended over these 9 inches; that this gave to her a legal possession of these 9 inches, and the fact that the window was permitted to remain there with the eaves extending was evidence of her assertion of right to possession. The width of this dormer or bay window east and west was about 8 feet, and it projected north along this 8 feet in length. The eaves of this dormer window, but not the dormer window, projected about 9 inches over the land owned by the defendant; that is, she claims a right by adverse possession to these 9 inches, based on the fact that the eaves of this bay window, for a distance of 8 feet east and west up in the air, extended 9 inches over on

the defendant's land. The erection of the building complained of was on a line between the plaintiff's and the defendant's land, and the south wall of the building was about 6 inches from the dormer window proper.

It does not affirmatively appear that either plaintiff or her husband at any time knew that the eaves of this dormer window extended over the line and onto the land conveyed to the husband. It does affirmatively appear that the conveyance made by the wife to the husband covered the 9 inches now claimed by the plaintiff. At the time this conveyance was made, this building stood in the same place it now stands. There being no reservation of any right to these 9 inches in the conveyance itself, or an easement for the purpose of maintaining the window, the conveyance without reservation negatives the idea that the plaintiff then asserted or claimed any right, or reserved any easement in the land conveyed; and surely it cannot be claimed from this record that she asserted any right in the ground itself, or claimed any right to the ground in controversy itself since such conveyance was made by her to her husband, except such as may be found in the fact that the bay window was permitted to remain, after the conveyance, the same as before.

2. ADVERSE POSSESSION: evidence: "use:" notice of adverse claim.

Section 3004 of the Code of 1897 provides:

"In all actions . . . in which title to any easement in real estate shall be claimed by virtue of adverse possession thereof for the period of 10 years, the use of the same shall not be admitted as evidence that the party claimed the easement as his right, but the fact of adverse possession shall be established by evidence distinct from and independent of its use, and that the party against whom the claim is made had express notice thereof."

Code Section 3005 provides:

"Whoever has erected, or may erect, any house or other building near the land of another person, with windows over-

looking such land, shall not, by the mere continuance of such windows, acquire any easement of light or air, so as to prevent the erection of any building on such land."

As bearing upon this question, see *Puroto v. Chieppa* (Conn.), 62 Atl. 664.

It may be conceded, and is conceded, that adverse, actual, visible, notorious, continuous and hostile possession of real estate for 10 years, or more than 10 years, under color of title or claim of right, gives fee simple title to the person so in possession. This rule has been frequently announced by this court. This case, however, does not come within the rule, for the reason that no facts are disclosed in this record showing color of title or claim of right in Mrs. Belding at any time since she conveyed the property to her husband. She conveyed 82½ feet off the north end of the lot in controversy. The undisputed record shows that the land now claimed by her is a part of this 82½ feet; that after such conveyance she had no color of title to any of the land so conveyed to her husband; that after the conveyance she asserted no claim of right to the property so conveyed, except in so far as such assertion of right may be found in the fact that she permitted the eaves of her dormer window to extend over the land conveyed, after the conveyance was made.

There is no affirmative evidence in this record that she knew at any time that the eaves of her dormer window so extended; nor is there any evidence that the defendant knew that she was asserting any claim against the land conveyed, based upon the fact. Her claim was not adverse to any right conveyed by her to her husband, nor to any of the land so conveyed. Nor does it appear, even under her claim of acquiescence, that her husband or his grantee ever acquiesced in any right based upon any such claim.

3. BOUNDARIES: acquiescence: nonapplicability of doctrine.

We think that the record fails to bring the plaintiff within the rule on which a right may be acquired by adverse possession, or within the rule of acquiescence recognized in

*Miller v. Mills County,* 111 Iowa 654; *Griffin v. Brown,* 167 Iowa 599, and other cases.

Her further claim is, however, that, before the divorce decree was entered, she and her husband entered into a written stipulation for the division of the property in the event a decree of divorce was granted. In this stipulation it was provided, among other things, that J. W. Belding should have and hold in his own right the largest house situated on Lot 1 in Block 2 in Allen's Addition to the city of Des Moines, and numbered 1202 West Locust Street, and the north 84 feet of said lot, or within 9 inches of the north side of the north cottage bay window; that the plaintiff should have and hold in her own right the three cottages situated on Lot 1, Block 2, in Allen's Addition to the city of Des Moines, and Nos. 310, 312 and 314, situated on said lot and block, except what is stipulated herein to be held by the defendant. This stipulation was never filed or entered of record. The decree, however, that was entered recites as follows:

<span style="margin-left:2em">4. DIVORCE: decree: non-record stipulation: effect.</span>

"Parties hereto having made a written stipulation defining the interests of each of them in the real property before described, and defining the equitable interest of said J. W. Belding in Lot 1, Block 2, Allen's Addition."

And then it recites the granting of the divorce, and further decrees that, in accordance with said findings and stipulation, the said J. W. Belding is the owner of the north 82 feet 6 inches of Lot 1, Block 2, and the plaintiff is the owner of the south 85 feet 11 inches of said lot and block; and further decrees that J. W. Belding, within 10 days from the date of entering the decree, convey to the plaintiff the said 85 feet 11 inches, and that the plaintiff, Lovina C. Belding, convey to J. W. Belding the north 82 feet and 6 inches of said lot. Thereafter, and in pursuance of said decree so entered, conveyances were made as hereinbefore stated.

It appears, therefore, that whatever stipulation was made

between the parties prior to the entering of the decree was merged in the decree and deed subsequently executed. No rights can be acquired by either as against the other, based upon the stipulation. The decree defined their respective rights in the property, and, in conformity with the decree and its requirements, the deeds were executed and delivered. The rights thereafter rested upon the decree and the deeds, and not upon the stipulation, which, as said before, became merged in these subsequent proceedings.

We think that plaintiff can base no right to this strip, based on that stipulation, as against this defendant. The deeds were made in conformity with the decree of the court. The decree fixed the rights of the parties in the lot. The deeds were merely made to execute and fulfill the requirements of the decree. It is not claimed that there was any mistake in the decree.

Upon the trial of the case, this stipulation was not produced, but the defendant was permitted to lay the foundation for the introduction of secondary evidence of its contents, and secondary evidence of its contents was before the court. Since the trial of the case, however, the plaintiff claims to have procured the original stipulation, and thereupon filed a petition for a new trial, based upon the fact of newly discovered evidence. The contents of this stipulation were before the court. It was there on a showing that the original could not be found. The finding of the original does not change the record of facts. We think plaintiff was not entitled to a new trial upon such a showing.

5. NEW TRIAL: newly discovered evidence: non-change in record facts.

Further, we reach the conclusion that the stipulation is not binding upon this defendant in this controversy, under the record as made.

We find no reversible error, and the cause is—*Affirmed.*

EVANS, C. J., LADD and SALINGER, JJ., concur.