## G. W. BEGGS v. MATTHEW DULING, Appellant.

**Party Wall:** CONTRIBUTION. Under McClain's Code, section 3195, providing that, where a person builds a partition wall, the adjoining owner "may make it a wall in common by paying one-half of the appraised cost at the time of using it," the erection of a temporary shed, ten feet high and open on two sides, with one end of its batten roof resting on a 2x6 scantling, nailed to a two-story partition wall on the adjoining lot, is not such an appropriation of the wall as will charge the owner of the shed with contribution, or justify his grantee in assuming that such contribution has been paid, so as to entitle him to make permanent use of the partition wall without contributing to its cost.

*Same.* Under said statute, an appropriation of but five feet of a two-story partition wall ninety feet long, by the erection of a one-story stable, will not justify charging the owner of the stable with one-half of the cost of the entire wall.

MAXIMS. These statutes and this holding rest on the equitable principle that equality is equity, and that where there is equality in right, there should be equality of burden.

*Appeal from Woodbury District Court.*—HON. GEORGE W. WAKEFIELD, Judge.

SATURDAY, APRIL 10, 1897.

ACTION at law, to recover one-half the value of a party wall, erected by plaintiff, and thereafter used by the defendant. Defendant claims that he purchased the property occupied by him, after use had been made of the wall, without notice of any claim in plaintiff for the value thereof; and further pleads the statute of limitations. Trial to the court without a jury. Judgment for plaintiff, and defendant appeals.— *Affirmed.*

*Eugene Lutz* and *W. G. Sears* for appellant.

· *M. B. Davis* for appellee.

Deemer, J.—The parties to this controversy are the owners of adjacent lots. These lots are one hundred feet long. The lot now owned by appellant was formerly owned by one Bradley. Prior to the time plaintiff purchased his lot, Bradley had erected a two-story building covering the south fifty feet of his lot. In 1882, plaintiff constructed a brick building upon his lot, ninety feet long; the south fifty feet of which was of the same height as the Bradley building, and the north forty feet one story in height. As plaintiff used Bradley's west wall, he paid him one-half the cost thereof, as by statute provided. In May, 1884, plaintiff's building, having been destroyed by fire, was rebuilt, and the entire length of the building, to-wit, ninety feet, was made two stories high. In the year 1886, the Bradley building was used by the United States Express Company; and in order to shelter the wagons used by this company, Bradley's grantee, one Marks, constructed a shed north and to the rear of his building. This was built by nailing a plank to the partition wall, upon which a batten roof was placed; the south side being supported by the Bradley building, and the northeast corner by a post set in the ground. The roof slanted towards the east, and the sides of the shed to the north and east were left open. Later in the season, a brick stable one story high was built on the north end of the Bradley-Marks lot. This stable extended south so as to cover about five feet of the wall between the two lots. The shed occupied the space between the main building and the stable. Appellant purchased the Bradley property of Marks in March of the year 1890, and in the year 1892

removed the shed, and in its place erected a new structure, which is two stories high, and is designed for use as a photograph gallery. This last-named building was constructed by setting two posts on the east line of the lot at about equal distances from the main building and the brick stable, the posts being of the same height as the first story of plaintiff's building. On these posts was placed a plate 8x8 inches, extending from the old Bradley building to the stable. Resting on this plate were two cross timbers, the other ends of which were let into the wall built by plaintiff. These cross timbers carry the joists to which was nailed the floor of the second story of the building. The south ends of these joists were let into the main Bradley building, and the north ends rested on the brick stable. The second story of the gallery is supported by a truss resting in part upon iron rods passing through the cross timbers. The north and east sides of the second story of this building are built of brick, and the building is a permanent and substantial structure, although the first story has no floor, and is open to the east. This action is to recover one-half the appraised value of the north forty feet of the wall under and by virtue of the provisions of McClain's Code, sections 3194, 3195, which are as follows:

"Sec. 3194. In cities, towns and other places surveyed into building lots, the plats of which are recorded, he who is about to build contiguous to the land of his neighbor may, if there be no wall on the line between them, build a brick or stone wall, at least as high as the first story, if the whole thickness of such wall does not exceed eighteen inches, exclusive of the plastering, and rest the one-half of the same on his neighbor's land, but the latter shall not be compelled to contribute to the expense of said wall.

"Sec. 3195. If his neighbor be willing, and does contribute one-half of the expense of building such

wall, then it is a wall in common between them; and if he even refuses to contribute to the building of such wall, he shall yet retain the right of making it a wall in common by paying to the person who built it one-half of the appraised value at the time of using it."

Defendant does not claim that plaintiff has been paid for one-half the wall, but he insists that he bought his lot for a good and valuable consideration; that prior to the time of his purchase the wall had been used in common, and that he did not know, when he bought, that plaintiff had not been paid for half the wall, but believed that it had been paid for. He also says that the wall had been used in common for more than ten years prior to the beginning of this suit, and that plaintiff's action is barred. In the case of *Bertram v. Curtis*, 31 Iowa, 46, we said: "In the absence of any representations by the vendor of a vacant lot as to the ownership of a wall resting one-half thereon, the presumption of the law under our statute is that the ownership is in him who built it, or his grantees; for the builder had no legal right to demand, nor the owner of the vacant lot any obligations to pay for, the half resting on the vacant lot, until the owner of such lot shall use the same as a party wall, though he may do so, or join in building it; but in case the wall was so used by the owner of the lot, vacant when the wall was built, but now covered with a building resting therein, the presumption is that it belongs to the grantor of the lot, for prior thereto, and at the time of using it, the law devolved upon him the duty and obligation to pay therefor. In both cases the presumptions are in accord with the legal right and the reciprocal obligation." It is here contended that at the time appellant purchased the lot from Marks the wall was being used in common, and that defendant had the right to assume that the half had been paid for, or that plaintiff held the obligation of Marks to pay for

it, and that in either event he cannot rightfully be charged with any part of the value of the wall. On the other hand, appellee denies that the part of the wall for which he seeks compensation was being used in common at the time appellant purchased his lot; and says that the shed which was erected was a temporary structure, joined to the brick wall by spikes, and was of so slight and temporary a character that no one would be likely to suppose that the brick wall was being used in common. In order to determine the exact question at issue, we must look to the evidence relating to the character of the structure known as the shed. It is as follows: "The shed and stable were built to the north in 1886, and were open to the east side and north end. The batten roof on the one-story shed was attached to plaintiff's wall by a scantling 2x6, nailed to it in the brick wall; and was open on the east and north end, and was supported by a post on the east side. The shed was built first, the stable afterwards; and when the stable was built the shed was extended to the barn. The shed was used for our wagons, and the stable for our horses." "The shed was ten feet high on the east side, and the west, on plaintiff's wall, was one foot higher. The plaintiff's wall above the shed and stable was not used by the owner of defendant's lot. The northeast corner of this shed was supported by a post set in the ground. While we were there we had the barn built, and there was a vacant space with no shed over it, and Mr. Marks covered up the whole space with a shed." Now, in the case of *Zugenbuhler v. Gilliam*, 3 Iowa, 391, we said that, where the adjoining proprietor builds into a party wall which he did not contribute to the building of, and uses it, he makes it a party wall, and becomes liable to contribute to its cost. The statute in express terms says, that the neighbor may make a wall built under the provisions of McClain's Code,

section 3194, a party wall by paying to the person who built it one-half the appraised value at the time of using it. This statute is based upon the old equitable doctrine that equality is equity, and that where there is equality in right there should be equality of burden. Before a "neighbor" should be charged with the burden of a party wall, it must appear that he intended to make it a wall in common. If the use to which he puts it is of so slight and temporary a character as that it could not reasonably and fairly be said that he intended to appropriate and utilize the wall permanently, he should not be charged with the burden imposed by the statute. As used in this state, the word "use" has reference to the habitual or permanent employment of the means to the accomplishment of a purpose; and this purpose is the utilization of the standing wall as part of some permanent structure. Temporary or provisional utilization will not suffice to charge the adjoining owner; nor will such use justify a purchaser in assuming that all rights with reference to party walls between neighbors have been adjusted. The shed in question was a temporary and provisional structure, erected to answer passing needs, and, if attempt had been made to charge the adjacent owner for the half of the wall by reason of the use thereof in the erection of the shed, it would certainly have failed. See *Shaw v. Hichcock*, 119 Mass. 254; appeal of *Heimbach* (Pa. Sup.) 7 Atl. Rep. 737. When defendant erected the photograph gallery, he constructed a permanent building, and made such use of the wall as to indicate that he intended making it a wall in common, and he should be charged with one-half the appraised value of this north forty feet, less that part already in use by the brick stable. This, as we understand the record, is what the trial court did. It is insisted on behalf of appellant that, as soon as any part of the ninety foot

wall was used, a cause of action arose against the user for one-half of the appraised value of the whole wall; and that he, having purchased after this cause of action accrued, cannot be taxed with any part of the value of the wall. He further says that the statute of limitations bars plaintiff of all relief under such circumstances. The difficulty with this contention is that the first premise is not correct. Use of but five feet of the wall one story in height would certainly not justify the taxing of one-half of the value of the entire wall, ninety feet long, and two stories high, to the user of the small fraction of the wall; and use of fifty feet of the south end of the wall in common will not justify the conclusion that the whole wall is owned in common. As we find that no permanent use was made of the north forty feet of the wall, except that covered by the brick stable, until the year 1892, when the photograph gallery was erected, there is no occasion for determining when the statute of limitations began to run, for, in any event, the action is not barred. The conclusion arrived at in this case is not in conflict with the case of *Deere, Wells & Co. v. Weir-Shugart Co.*, 91 Iowa, 422 (59 N. W. Rep. 255). The decision in that case was made to turn upon the permanent character of the structure erected by the defendant, as well as upon the fact that the wall formed one side of the structure. It must be remembered that this is a law action, tried to the court without a jury, and that the question as to the character of the shed was one of fact. The conclusions arrived at by the learned district judge are so far supported by the evidence that we are not authorized to disturb the judgment founded thereon. The case of *Nolan v. Mendere* (Tex. Sup.) 14 S. W. Rep. 167, is in line with our conclusions. The judgment is AFFIRMED.