FALK J. YOUNKER, Appellant, v. R. R. McCUTCHEN et al., Appellees.

PARTY WALLS: Character of Walls—Tenant's Right to Remove
1 Buildings—Effect. The walls of a building, constructed by a lessee under right to remove the same at the termination of the lease, may nevertheless become ''party walls.''

PARTY WALLS: Character of Walls—Long-Continued Use. A substantial two-story wall, approximately on the line separating the properties of two lot owners, and for 18 years used in common by such owners or their tenants, cannot be considered of such temporary character as to necessarily prevent it from becoming a ''party wall,'' though it was originally erected by a tenant under right of removal.

PARTY WALLS: Contribution—Statutes. Principle recognized that, 3 in the absence of contract, an adjoining lot owner may not be compelled to contribute to the cost of a party wall except under the methods prescribed by the ''party wall'' statutes. (Secs. 2994–3002, inc., Code, 1897.)

PARTY WALLS: Contribution—Reconstructed Walls. A lot owner 4 who, on his own initiative, tears down a party wall because the same is insufficient for his purpose, and rebuilds the same at his own expense, cannot enforce contribution from the adjoining lot owner so long as such adjoining owner uses such reconstructed wall *in no different manner and to no greater extent* than he used the wall which was torn down. (Sec. 2999, Code, 1897.)

PARTY WALLS: Location—Party Walls Not Coterminous with Lot 5 Lines. A wall may be a party wall, even though not located exactly on the lot line between the adjacent owners. So held where the wall was, at one end, wholly on the land of one lot owner to the extent of 2 or 3 inches.

PARTY WALLS: Contribution—Initial Liability—Lessees. Whether 6 the legal duty to reimburse one who has erected a party wall at his own expense is the sole personal liability of the one *who first uses such wall in a substantially permanent way* in common with him who erected it, even though such first user be only a lessee of the owner of the adjoining lot, *quaere.*

*Appeal from Polk District Court.*—JAMES P. HEWITT, Judge.

FRIDAY, SEPTEMBER 29, 1916.

ACTION at law brought by appellant to recover the value of one half of what plaintiff calls a wall in common, owned by and constructed at the cost of the appellant and used by appellee, and to recover for the value of nine inches of ground, being one half of the ground upon which said wall is located. Appellant alleged in his petition that, shortly after the plumbing company removed from defendants' premises, and when, as he says, it had no longer any right in or to the use of the premises nor the building situated thereon, the defendants used and are using the west wall of plaintiff's building up to the top of the second floor thereof, being a distance of 42 feet, as a wall in common, or party wall, and that it is the east wall of the building on their premises; that defendants have made openings in said wall, inserted joists and timbers for the building, and removed bricks therefrom; that they have failed and refused to pay plaintiff the value of so much of said wall as they are using as a wall in common, and for nine inches, or one half, of the ground upon which said wall is located; that the value of the wall as used by defendants is $750, and the value of the nine inches of ground, $1,125. Trial was had to the court without a jury. At the close of the evidence, defendants moved that plaintiff's petition be dismissed, and the motion was sustained. Judgment was rendered against plaintiff for costs, and he appeals.—*Affirmed.*

*Strock & Wallace* and *Miller & Wallingford,* for appellant.

*Cummins, Hume & Bradshaw,* for appellees.

PRESTON, J.—The case is somewhat complicated, but the facts are not in dispute. There was some evidence introduced, but the facts are shown largely by the pleadings and

the admissions therein and the stipulations of counsel. That there may be a better understanding of the situation, we attach a plat of the properties in controversy.

The plaintiff and defendants bought their properties at about the same time, in November, 1906. The defendants claim that the wall between the properties is a party wall, under Section 2999 of the Code, to be later referred to, and, as we understand it, appellant claims it to be a party wall, under Code Section 2994 and other sections of the statute; though in his reply argument he claims that the east wall was at no time a party wall, but that, if it was such, that characteristic of the wall was lost when the appellees and appellant entered into the contract fixing the dividing line and made the conveyances to each other which put almost all, if not all, of this wall on plaintiff's premises. No mention is made in that contract and the conveyances, of the wall in question. The contracts fixing the dividing line and the conveyances to each other were executed May 7, 1907. Plaintiff purchased his

property of one Bertha Clapp Harbach. On said May 7, 1907, plaintiff was the owner, and, by and through his tenants, was in possession of his property, which is described:

"The east ⅓ of Lot 1 and of the North ⅓ of Lot 2 in Block 1 of the town of Fort Des Moines, now within the corporate limits of the city of Des Moines, Polk County, Iowa."

Plaintiff's property comprised two business lots fronting north on Locust Street, and the business lots were locally known as 712 and 714 Locust Street. There was a public alley east of it, and the property extended south from Locust Street 88 feet. The building on the property was 80 feet deep, leaving a private alley 8 feet wide in the rear. On the date last mentioned, defendants were owners in fee and by their tenants were in possession of their property described as follows:

"The middle ⅓ of Lot 1 and of the north ⅓ of Lot 2, in Block 1 of the town of Fort Des Moines, now within the corporate limits of the city of Des Moines, Polk County, Iowa."

This parcel of land also comprised two business lots, fronting north, adjoining on the west the plaintiff's property. Defendants' lots were locally known as 716 and 718 Locust Street, 716 being east of 718. There were buildings upon both plaintiff's and defendants' properties, partly two story and partly one story. After plaintiff purchased his property, it was learned that the frontage on Locust Street from the alley to Eighth Street was about 2 feet more than 132 feet, as then supposed; that there was some dispute as to the west boundary line of the property described in his contract of purchase; the frontage was divided equally by the three lot owners so that appellant owned ⅓, or 44.72 feet west of the alley and defendants owned 44.72 feet next west; and on May 7, 1907, a written contract, before referred to, was entered into, fixing the boundary line between appellant's and appellees' properties.

The contract of May 7th was signed by plaintiff and

defendants and their wives, and by plaintiff's grantor, Bertha Clapp Harbach. The contract established a line 44 feet and 6 19/24 inches west of the east line of Lot 1; and north ⅓ of Lot 2, as the boundary line between the properties, and each party quitclaimed to the other the real estate lying on the other side so established. But no mention was made in this agreement or in any agreement entered into between the plaintiff and defendants of or concerning the party wall then and theretofore separating the buildings upon the adjoining lots.

As the east side of the east wall of the old building, No. 716 Locust Street (defendants' east lot), was .4 of a foot, or 4.8 inches, east of the newly established dividing line at the rear, and as it veered slightly to the east as it approached Locust Street, until, at the south line of Locust Street, its east side was .9 of a foot, or 10.8 inches east of said newly established dividing line, this newly established dividing line cut off most of the east wall, and, at the front, 2 or 3 inches of the building, No. 716. In other words, most of the old wall and 2 or 3 inches of the building itself, near Locust Street, were thus made to extend over and to rest upon the plaintiff's lot. For this reason, as defendants claim, and for the reason that the Des Moines Plumbing Company still held a lease of said building which did not expire until April 1, 1910, the following provisions were incorporated in the agreement, to wit:

"This agreement and conveyance is made subject to the lease or leases now held by the Des Moines Plumbing Company, covering a portion of the premises hereinbefore described, and is not in any way to affect or disturb any rights of said Des Moines Plumbing Company which have been heretofore acquired upon said lease or leases, or which have been acquired by it, by possession and occupancy of said premises, or any part thereof.

"Neither shall this agreement convey or give any right whatsoever to the said Bertha Clapp Harbach and Falk J. Younker, or either of them, their successors or assigns, to any

lease or leases with the Des Moines Plumbing Company, nor to collect or receive any part or portion of the rents payable by said company under said lease or leases, or any part of the premises now occupied by it thereunder; but the said R. R. McCutchen and W. F. Mitchell, their successors or assigns, shall have the same right to said rents, and to collect and receive the rents hereafter payable by said Des Moines Plumbing Company, its successors or assigns, under said lease or leases, for the use and occupancy of any part of the said premises now occupied by the said Des Moines Plumbing Company thereunder, until the expiration of the period covered by said lease or leases, as though this agreement had not been made.''

At the time this contract was executed, defendants' property, No. 716 Locust Street, was occupied by the Des Moines Plumbing & Heating Company, a copartnership composed of W. M. Kubec and C. W. Rosene, under a 10-year written lease from the former owner of the property, one Sarah A. Clapp. The lease will be referred to later. Some 15 years before the date of the contract fixing the dividing line, or on October 1, 1892, Sarah A. Clapp, the then owner of the premises now owned by defendants, had made an 8-year lease of the premises No. 716 Locust Street to one C. W. Fowler, which lease expired April 1, 1900. The Fowler lease provided that the lessee ''agrees not to sell, assign or transfer this lease, nor underlet said premises, or any portion thereof, without the written consent of the lessor.'' Another paragraph of the lease provides that the lessee ''agrees to erect a building, to be used for plumbing and gas fitting purposes on said premises.'' Another paragraph of the lease provides that the' lessee reserves the right ''upon the termination of this lease, to remove the buildings from said premises provided he has complied with the covenants and agreements herein contained; otherwise the same shall remain as security for the performance and discharge thereof.''

Fowler built the building No. 716 shortly after he leased

the premises, and plaintiff in his petition alleges that he built it in compliance with said written lease. Defendants, in their answer, admit that Fowler built the building in the summer of 1892. Kubec, one of the occupants, testified that he had been a member of the Des Moines Plumbing & Heating Company for 19 or 20 years and that Fowler built the building and that the plumbing company went into the property in the early 90's. The 10-year lease before referred to, from Sarah A. Clapp to the plumbing company for the property known as 716 Locust Street, began April 1, 1900, and expired April 1, 1910. The lessee named in and who subscribed this lease is the Des Moines Plumbing Company, and appellees regard it as important that in this lease the premises are described as real estate is usually described, with no reservation of or reference to the ownership of the brick building located thereon. The plaintiff alleges in his petition that the Des Moines Plumbing Company, a partnership consisting of C. W. Rosene and W. M. Kubec, sometime during the year 1895, with the consent of the lessor, succeeded to all the rights of the lessee, C. W. Fowler, in and to the 8-year lease and the building erected by said Fowler. This is denied by the answer, and defendants specifically deny that the Des Moines Plumbing Company, or any person, firm or corporation other than the owner in fee of the leased premises, viz., the said Sarah A. Clapp, became the owner of said building upon the termination of said lease. While, as above stated, plaintiff alleges in his petition that the plumbing company, with the consent of the lessor, succeeded to the rights of Fowler, there is no evidence in the record of the assignment of the 8-year lease by Fowler to the plumbing company or its members or to anyone, nor is there any evidence in the record of the written consent of the lessor, Sarah A. Clapp, to an assignment of that lease, nor of her verbal consent to an assignment of it, and there is nothing to show that Mrs. Clapp ever waived any provision of the lease. It should be noticed also that the 10-year lease was granted to the Des Moines Plumb-

ing Company, a different party from C. W. Fowler, who was the lessee of the prior 8-year lease; and the lease to the plumbing company gives no title to or right of removal of the brick building located upon the premises. There is nothing in the 10-year lease itself showing it to be a renewal or extension of the 8-year lease, and nothing to show that the plumbing company was the vendee of Fowler of the building built by him, or the assignee of his conditional right to remove said building at the termination of his lease. The situation remained the same from May 7, 1907, until July 12, 1909, when the plaintiff, having in the fall of 1908 acquired a deed from his vendor, Bertha Clapp Harbach, and being about to erect a new brick building upon his lots three stories in height with a basement under it, by written agreement of said date plaintiff purchased from the Des Moines Plumbing & Heating Company, lessee, a right to remove that portion of the building No. 716 Locust Street which extended east of the dividing line theretofore agreed upon by the owners of the properties and to build the west wall of his new building upon the dividing line theretofore established by the fee owners. This agreement provided, among other things, as follows:

"And the said party of the second part (the plaintiff) will, at his own cost and expense, insert the joists that reach said new wall and attach the building now occupied by the party of the first part (the Des Moines Plumbing Company) to the said wall constructed by the party of the second part, and finish the west surface of said newly constructed wall for a distance of two stories above the ground, so that the rooms in said building and the building now occupied by the said party of the first part shall, as soon after the completion of the said wall as possible, be left in as good condition as the same are now in; that the party of the second part will do such repapering and refinishing on the inside of the rooms now occupied by the party of the first part as shall be necessary to leave the same in as good condition as they are now in. And the

said party of the second part agrees that he will construct said new wall and perform the terms of this contract as soon as practicable.''

The defendants were not parties to this agreement. Upon the execution of this agreement, plaintiff proceeded to erect his building. He tore down the east wall of defendants' building, a party wall as is claimed, and undermined it. The concrete foundation, or at least the footing for the foundation of the new wall, was built so as to project from 4 to 6 inches west of the dividing line and upon defendants' property. The brick wall of the basement, above the foundation, was built entirely upon plaintiff's ground, the west side thereof abutting upon the dividing line agreed upon in the contract of May 7, 1907, except at the north or Locust Street end, where it was widened into a pier 3 feet wide east and west and 4½ feet long north and south. 17 inches of this pier projects west of the dividing line and over and upon plaintiff's lot. In accordance with the contract between plaintiff and the plumbing company, of July 12, 1909, as plaintiff's west wall was being built, the plaintiff himself inserted in it the joists of the main floor, the second floor, and the roof of the building No. 716, and restored, or at least partially restored, the inside of the east wall of said No. 716, as provided in said contract with the lessee of the building. On March 25, 1910, the 10-year lease of the Des Moines Plumbing Company of the building No. 716 being about to expire, and, as defendants claim, in order to settle and amicably to adjust the rights of said company, or, as it was then styled, the Des Moines Plumbing & Heating Company, if any it had in and to the building, heating plant and fixtures in the buildings, the defendants entered into a written contract with the Des Moines Plumbing & Heating Company with reference thereto. This contract provides, among other things:

''Party of the first part (Des Moines Plumbing & Heating Company) does hereby sell, assign and transfer to the parties of the second part (R. R. McCutchen and W. F.

Mitchell) all their right, title and interest in and to the building now owned, and warranted to be free from liens and incumbrances, and occupied by the party of the first part; except the party of the first part reserves the right to take from said building the heating plant, and pipes and radiators connected with the same, the glass and doors in the present front of the first story of said building, the sash at the rear end of the present building and the sash in the front of the rear of the second story, and the plumbing fixtures on the first floor.''

About April 15, 1910, the ''Des Moines Plumbing Company,'' or the ''Des Moines Plumbing & Heating Company,'' having surrendered possession of the building No. 716 to the successor of its lessor, the defendants herein, the latter commenced and proceeded to remodel the front thereof, strengthen its floors, repair its roof, and repair and redecorate its interior walls, without paying, or offering to pay, or in any way acknowledging liability to, the plaintiff for any portion of the cost of the west wall of plaintiff's building with which he had replaced the old wall of defendant's building.

In making the changes or repairs on their building, defendants have not put any basement thereunder. Defendants' building, No. 716 Locust Street, was built about the year 1892. It was 80 feet deep. It had no cellar or basement under it, and, as we understand it, there was no cellar or basement under plaintiff's building until he rebuilt. The foundation of the east wall of defendants' building, for its full length, rested upon the surface, or upon the ground, a few inches below the surface of the lot. For a distance of 25 feet south of Locust Street, the brick wall of defendants' building was two stories high, thence south 20 feet, it was one story high and built of brick. For the next 19 feet south, it was two stories high, the first story built of brick, the second story built of wood; 2 by 6 studding or uprights resting upon the top of the brick wall, not lathed or plastered, but built against the adjoining weather board wall of the building to

the east, No. 714. There was no space between this wooden portion of defendants' wall and the corresponding wall to the east: one was built against the other. The rear 16 feet of this wall, two stories high, was built of studding, and this portion of the wall was the wall for both buildings, 716 and 714. Testimony shows that the roofs were practically one roof over the two buildings and that there was no division between the two roofs. One of plaintiff's witnesses, a general contractor whose shop was the second story of plaintiff's building, No. 716 Locust Street, up to the time it was demolished by plaintiff, testified:

"I moved out just before Younker commenced to improve; noticed the work occasionally as it progressed. He tore down the walls along the west side of his property and built a brick wall there. They sawed off the joists of the other, to my recollection, and let them stick in on the brick wall they were building up, and bricked around them, and that held the joists. When they built up their wall to the first floor, they cut off the joists long enough to stick into that wall, and then bricked up. When they came to the second floor, they did the same thing. When they came to the roof, they did the same thing, and I should say they flashed the roof on the Younker wall. It is flashed there now, so that Younker's new wall now, the west wall, is the dividing wall, and the east wall of the building No. 716 Locust Street, back 80 feet."

One of the defendants' witnesses, who is also a general contractor, testifies:

"They built in the construction of our building into their wall, the whole distance of 80 feet. The joists at the rear end and towards the rear of the building reached to the new wall. Probably all of them did not reach. On the short pieces, they spiked pieces, or nailed pieces of joists onto the sides of them, and extended them through so they would reach into the wall. I am sure all the first floor joists went into the new wall. The second story was connected in the same manner,

and the floor joists were put into the Younker wall by Younker. The ceiling and the roof were connected in the same manner. They finished the repairs of the building and put it back in the same condition it was before they tore this wall down. They plastered portions of the brick wall, and papered some of them, and put baseboards along the brick wall on that side where it had been taken out; restored the building practically in accordance with the Younker contract with the Des Moines Plumbing Company. The roof was fastened on. I do not think it was counter-flashed. What I mean by 'counter-flashed' is putting tin up over the tarred and graveled roof, so as to keep the water from running down behind at any time."

In April or May, 1910, soon after it was vacated by the plumbing company, defendants commenced repairing their building, No. 716. The dimensions of the building were not changed in any particular, nor was the east wall extended in any direction, either up or down, or north or south. In describing what they did, one of the defendants testified as follows:

"After the plumbing company vacated, we put in a new plate glass front in our building; put in a new floor on the first floor; plastered all the walls of the first floor; a part of the first floor was plastered. We finished plastering the back to the rear, put new windows at the rear to give more light and new doors, and fixed up the sky-light with new glass, new frame and painted it. We did nothing with the east wall except plastering, papering and painting it, except in front at the sidewalk line against the east wall, we put in an iron post where there was a wooden one. The iron post rested on the foundation that the wooden post rested on. Q. That was all you did with the wall? A. Yes, sir; we put in some extra floor joists along by the side of some that were not, we considered, strong enough, in the way they had been spliced, to reach the brick wall. Q. Where Younker had spliced them, in some places you put in new solid ones?

A. Joists. We in no way changed the size or the shape of the building, nor occupied any more wall than before. Did not increase the size of the light well, did not excavate under the building. Our east wall is no larger in any dimension than it was prior to the Younker improvement.''

On cross-examination, Mr. Mitchell said:

''In putting in these new joists we took out the brick along the side of the joists that had been built in and made that hole larger and stuck our joists into that hole by the side of the other joists. We made a new hole for the new joists, enlarged the hole that was there.''

And upon redirect examination, he testified:

''Q. Did you make new holes or simply enlarge the holes that Younker had already made? A. Enlarged the holes that were already made. Q. And put those new joists alongside of the old ones which had already run into the wall? A. Yes, sir. Q. There were no other joists put in except those by you? A. No, sir.''

This testimony is not disputed. It was stipulated that the surface area of the Younker wall, now used as the east wall of defendants' property, is 80 feet by 23 feet, less 20 by 10 feet, above the first floor joists. As we understand it, the 20 by 10 feet just referred to is the east side of the open court or light well, which now occupies and has always occupied a space in the center of the second story of defendants' building. Defendants allege that they paid to the plumbing company $148.40, referred to in the contract of March 25, 1910, and permitted the plumbing company to occupy the premises free of rent to April 15, 1910, and claim that by this they paid the plumbing company for the use of the wall for which plaintiff is now asking pay, and the evidence shows that they did pay such sum of money and permitted the plumbing company to remain in the building, but plaintiff denies that this constitutes a payment for the interest in the wall. The east line or side of the plumbing company building extended over

and upon plaintiff's property its entire length; but, as the witnesses put it, it was askew, so that it extended farther on the north line than it did at the south. The plaintiff in his petition at first offered to remove so much of the foundation or footing as extended on defendants' lot, but by an amendment withdrew such offer, and pleaded as an estoppel against defendants that defendants were present when the footing and foundation of plaintiff's new wall were being constructed. There may be some other facts to which it may be necessary to refer in discussing the different points. At the close of the testimony, appellees moved the court to dismiss appellant's petition and to enter judgment against him for costs on substantially the following grounds:

"That the evidence fails to establish a cause of action against the appellees, or that they are indebted to the appellant. That the first person who used the appellant's west wall as a party wall was the Des Moines Plumbing & Heating Company, appellees' lessees, said lessees, if anyone, being liable to appellant for the cost of said wall. That all liability of appellant's neighbor to contribute to the cost of appellant's wall was adjusted and settled by the contract, Exhibit 'D,' dated July 12, 1909, between the appellant and the Des Moines Plumbing & Heating Company, and that appellees are not liable to appellant because they received a bill of sale dated March 25, 1910, from the Des Moines Plumbing & Heating Company, conveying the Des Moines Plumbing & Heating Company building to appellees free from liens and incumbrances; and that the wall erected by appellant comes within Section 2999 of the Code, and the evidence fails to show that the appellees were using as the east wall of their building, any more of the new wall erected by the appellant than of the old wall which formerly divided the coterminous properties."

1. Appellant's first proposition is that the building joined temporarily, as they say, to appellant's wall, was per-

sonal property up to the time it was acquired by appellees under contract and bill of sale from appellees' tenants, and they cite, in support of the proposition: District Township of Corwin v. Moorehead, 43 Iowa 466; Jones v. Cooley, 106 Iowa 165; Fischer & Knorr v. Johnson, 106 Iowa 181; McCarthy v. Trumacher, 108 Iowa 284; Union Terminal Co. v. Wilmar, 116 Iowa 392; Daly v. Simonson, 126 Iowa 716.

1. PARTY WALLS: character of walls: tenant's right to remove buildings: effect.

Appellees contend that, under the circumstances of this case, the cases cited do not support appellant's contention. Some of them are cases where a building was erected on leased land, and hold that, as between the parties, the building should be considered as personal property. Others involved the question of purchasers with notice of the agreement. In one of them, it was held that the execution of a lease providing that the lessee should, upon the termination of the lease, deliver the leased premises in as good condition as they were then in, does not deprive the lessee of the right granted to him by the lessor under a prior lease to the same premises to remove improvements erected by him, the occupancy being continuous under both leases. Counsel for appellees concede that, from these holdings, the court is inclined to hold that, where a lessee holds under a lease which reserves to him the right to remove the fixtures, by taking a renewal lease which contains no such reservation, he does not surrender his claim to the fixtures, but say that this is where the subsequent lease ran from the same owner, or his grantee, who had notice of the reservation, to the same lessee. This is true, that in none of the cases cited is recognized the right of removal by a lessee of a building erected upon real estate by a prior and different lessee, under a prior and different lease, simply because the first lease granted to the lessee therein any such right of removal.

On the other hand, it is contended by defendants at this point that, at all times during their ownership of the east

building lot now owned by them, they have been owners of the building No. 716, located on the east of said lots, as well as of the earth beneath it, and that the plumbing company, defendants' lessee, has never been the owner of said building; and they cite in support of this, Coke, 1 Inst. 4, 2 Bl. Com. 17–19, Tiedeman on Real Property, Sec. 2; and that a conveyance of land, unless exceptions of reservations be therein made, includes not only the earth, but everything attached to it, whether by nature, as trees, etc., or artificially, by man, as buildings and the like, citing *Van Wagner v. Van Nostrand*, 19 Iowa 422. And they say that, in cases where walls in common or party walls bestride a coterminal line, the coproprietors own in severalty the portions of the wall resting upon their own land, and the middle line of the wall marks the line of the adjacent lot owners (citing *Lederer v. Colonial Inv. Co.*, 130 Iowa 157). Appellant also contends that the temporary or provisional use of a wall abutting a division line will not suffice to charge the adjoining owners; nor will such use justify a purchaser in assuming that all rights with reference to party walls between neighbors have been adjusted. As we understand it, appellant's theory is that, because, as they claim, the building erected by Fowler was personal property, and being such was movable and temporary in character, and the east wall of the building was, for the same reason, but temporarily joined to appellant's west wall, it was a temporary or provisional use of the wall. In support of the proposition, they cite *Beggs v. Duling*, 102 Iowa 13; *Deere v. Weir-Shugart*, 91 Iowa 422, and other cases.

Appellees refer to the same cases in support of their contention that the east wall of appellees' building and the west wall of appellant's building, after the same was reconstructed by appellant, is permanent in character and forms the partition wall of the two buildings.

2. PARTY WALLS: character of walls: long-continued use.

We think the fact that a building may be torn down or removed from leased premises at the termination of the lease does not necessarily affect the char-

acter of its walls or the permanency of their jointure with adjoining walls. We are dealing now with the new wall as reconstructed by appellant and the rights and obligations of the parties therein under the record in this case. Again, if appellant's theory is that, because the building No. 718 was personal property, the east wall, prior to its destruction by appellant, was temporary in character, then we think such a claim is not borne out by the testimony. It is shown that the whole building and wall were built in 1892. The wall had been used as a wall in common of the adjacent properties for 18 years. Had it not been replaced by the appellant, it would doubtless still be doing duty as a party wall. It is suggested by appellees that, even if the plumbing company had the right to remove the old building upon the ground that it was personal property belonging to it, without proof that it had succeeded to the rights of a prior owner, it would have no right to remove the east wall, a wall in common used by it and its neighbor on the east. But, after all, it seems to us the question is, What are the rights and obligations of the parties as to the new wall? No claim is made by appellant that it is entitled to contribution for the old wall, but only as to the new wall built by appellant to take its place. It seems to us that these propositions are not controlling in this case, but that the determination of the case turns upon points discussed later in the opinion. It should be said here that appellant claims also that he built the new wall under Section 2994 of the Code, and that the right to recover contribution for the party wall arose when the adjoining owners (defendants) made permanent use of it. They claim also that, under the statute and decisions, every proprietor joining a wall has the right of making it a wall in common by repaying to the owner thereof one half of the value of the part he wishes to hold in common, and one half the value of the ground upon which it is built, if the person who has built it has laid the foundation entirely upon his own ground. We shall hereafter refer to the party wall statutes. As shown in the statement of facts

we have given, the plumbing company, appellees' tenants, were the first users of the new wall reconstructed by appellant as a party wall, and they had so used the old wall for many years, and it appears without dispute that the defendants have not used the new wall in any different way than the old and the new wall were used by the plumbing company. There has never been any agreement between the owners of the fee in regard to the party wall in controversy. The contract of May 7, 1907, before referred to, makes no reference to the party wall in question, so that, as before shown, the only agreement in regard to this wall was between the tenants of some of the owners and some of the owners.

2. Appellant concedes the correctness of appellees' first and second legal propositions. The first of these propositions is that the Iowa Party Wall Statute, Title XIV, Ch. 10, of the Code (Sections 2994-3003), was taken from articles of the Civil Code of Louisiana; these from the Code Napoleon; that the constitutionality of the statute is sustained by the courts only under the doctrines of *stare decisis,* and as an extreme exercise of the police power of the state. The second proposition of appellees' is that the party walls are unknown to the common law. They are creations either of contract or of statute. Being derogatory of the common law, they are strictly construed, and, in order to enforce any rights thereunder, the party must bring himself strictly within the letter of the law. They contend that, in the case at bar, there is no special agreement between the adjoining owners concerning the wall on the line between them; that plaintiff's rights, therefore, must be determined solely by our statute laws applicable to the facts established by the evidence. In support of the second proposition, appellees cite 30 Cyc. 775; 22 A. & E. Encyc. of Law (2d Ed.) 240, 242; *Whiting v. Gaylord* (Conn.), 34 Atl. 85; *List v. Hornbrook,* 2 W. Va. 340. To the point that, where a wall has been erected by the owner of a lot upon the boundary line between his and the adjoining lot, resting partly

3. PARTY WALLS: contribution: statutes.

upon each, in the absence of an agreement so to do, the common law imposes no obligation upon the owner of the adjoining lot to contribute to the cost of its erection, they cite *Preiss v. Parker,* 67 Ala. 500; *Orman v. Day,* 5 Fla. 385. They cite also *Wachstein v. Christopher* (Ga.), 57 S. E. 511, as holding that in such a case the builder of the wall may be ejected although only a few inches of the foundation of his wall projects upon the adjoining owner's lot, and even though to cut away this projection would cause great damage to the builder's property. It was held in *Hoffstot v. Voight,* 146 Pa. 632, that the right to enforce contribution to the cost of party walls is to be strictly limited to the terms of the statute.

3. We shall now take up the proposition which seems to us to be controlling and decisive of the case. Appellees contend that the new wall was erected under Section 2999 of the Code, and not under other sections of the party wall statute, as contended by appellant. Defendants claim that, the wall having been erected under Section 2999, plaintiff was bound to bear the expense thereof, and, the defendants having utilized no more of the new wall than the space occupied by their old wall, they cannot be forced to contribute to the cost of the new wall. We think, under the record, this must be so, at least as long as defendants do not use more of the new wall or in a different way than they or their tenants used the old wall, and the new wall for a time after its construction. It would seem that, under our party wall statute, there are three cases in which walls dividing adjoining lots may be made walls in common. First, under Code Sections 2994, 2995 and 2997. We shall not take the space to quote these at this point. These sections, or at least the first one, apply only where two adjoining building lots are vacant and unoccupied. Section 2995 authorizes the owner of the adjoining lot to pay one half the cost of the wall at the time of its construction, and thus make it a wall in common, but he may not be required to pay until such time as he actually makes

4. PARTY WALLS: contribution: reconstructed walls.

use of it. Section 2997 provides for the repairing and rebuilding of walls in common at the expense of all who have a right to them and in proportion to the interests of each therein. It will be remembered that, in the instant case, the plaintiff took it upon himself to destroy the old wall and replace it with a new one at his own expense and to carry out his own purposes and under arrangement with the tenants occupying defendants' lot.

Another way to make a dividing wall a party wall is under Section 3000 of the Code, which reads as follows: —

"Every proprietor joining a wall has the right of making it a wall in common, in whole or in part, by repaying to the owner thereof one half of its value, or one half of the part which he wishes to hold in common, and one half of the value of the ground on which it is built, if the person who has built it has laid the foundation entirely upon his own ground."

It is contended by appellees that this section applies only to cases where the owner of a lot has already built a wall on or near his lot line and the adjoining lot is vacant and unimproved, and they cite *Cornell v. Bickley*, 85 Iowa 219. However this may be, this section does provide that the proprietor of the lot joining the wall may make the wall a wall in common by paying one half of the value of the part of it which he wishes to hold in common, in case the person who has built has laid the foundation entirely upon his own ground. In such case, the adjoining proprietor "has the right of making it a wall in common in whole or in part by repaying to the owner thereof one half of its value, or one half of the part he wishes to hold in common, and one half of the value of the ground upon which it is built." This section might have been of some avail to plaintiff if there had been no wall on the line between him and his neighbors at the time he built his wall, and under the circumstances under which the old wall was built, and if plaintiff had laid the foundation of the west wall of his building entirely upon his own ground. But, as shown, neither of these conditions existed. As already

stated, plaintiff removed the old wall and replaced it with the new one because the old wall was not sufficient to support the new building, and because he wanted a three-story wall instead of the old two-story wall with no basement wall under it.

A third method of creating a party wall is under Code Section 2999, which reads:

"Every coproprietor may increase the height of a wall in common at his sole expense, and he shall repair and keep in repair that part of the same above the part held in common. If the wall so held in common cannot support the wall to be raised upon it, one who wishes to have it made higher must rebuild it anew and at his own expense, and the additional thickness of the wall must be placed entirely on his own land. The person who did not contribute to the heightening of a wall held in common may cause the raised part to become common by paying one half of the appraised value of raising it, and half the value of the ground occupied by the additional thickness thereof, if any ground was so occupied."

There is no way under our statute in which a wall in common can be created and a neighbor coerced to contribute to its cost, except by some of the methods prescribed by these statutes. It is contended by appellees, and we think their contention must be sustained, that Section 2999 applies to the situation here presented, and that plaintiff was proceeding under that section. As already shown, there was a wall in common, or party wall, before plaintiff built his new wall. This section applies where there is already in existence a wall in common between proprietors of adjoining lots, and one of these proprietors desires to heighten, strengthen or rebuild. The section provides that, if the wall so held in common cannot support the wall to be raised upon it, one who wishes it made higher must rebuild it anew and at his own expense. If he makes the wall thicker, the additional thickness must be placed entirely upon his own ground. The adjoining owner may cause the raised part to become common by paying

one half the appraised value of raising it and one half the value of the ground occupied by the additional thickness if any ground was so occupied. The plaintiff did remove the wall in common which had before existed and rebuilt it anew at his own expense, building it one story deeper and one story higher. It is undisputed that defendants had not used any portion of this rebuilt wall beyond the dimensions of their old wall, nor in any. different way. Should they make use of plaintiff's new wall in a different manner, the circumstances might be such as to create a liability for contribution on their part. But this we do not now determine. But this seems to be clear: that there is no provision of the statute which compels them to pay before such time. We think the fact that the center of the old party wall did not coincide for its entire length with the dividing line established by the agreement of May 7, 1907, and that, towards its north end, it encroached upon plaintiff's lot several inches, did not change its character as a party wall. It has been held that party walls do not necessarily have to be located exactly upon the true dividing line, provided they are used for party wall purposes. *Molony v. Dixon,* 65 Iowa 136; *Zugenbuhler v. Gilliam,* 3 Iowa 391. We said, in *Howell v. Goss,* 128 Iowa 569, 574:

5. PARTY WALLS: location: party walls not coterminous with lot lines.

"Defendant Goss had the right to increase the height of the wall at his own expense; and in so doing had the right to rebuild the old party wall anew and at his own expense. So long as his neighbor used no more of the reconstructed wall than he did of the old one, he was under no obligation to contribute to the expense of the improvement. But the statute says that when he wishes the raised part to become a wall in common, he must pay one half the appraised value of raising it, and one half the value of the ground occupied by the additional thickness of the wall. This statute evidently contemplates the rebuilding of an old wall, as part of the expense of raising it, which must be paid for in the first instance by

the party making the improvement; and so long as his neighbor uses no more of the new wall than he did of the old, he is under no obligation to contribute anything. But as soon as he desires to advantage himself of the new wall by carrying his building further up, he must pay his proportion of 'the appraised value of raising it.'. This, as we have seen, includes in this case the expense of rebuilding the old wall of sufficient thickness and strength to carry the added height. This construction fulfills the letter of the statute and comports with its spirit. It is fair and equitable to all parties and is in line with the objects and purposes of the act.''

We think the fact that the insertion of joists in the new wall in substantially the same way as they were inserted in the old wall does not make defendants liable for contribution. As bearing upon this point, see *Shaw v. Hitchcock*, 119 Mass. 254; *Fox v. Mission Free School* (Mo.), 25 S. W. 172. These cases arose under a contract between adjoining owners, and not under a statute, but the provisions of the contracts gave substantially the same right which our party wall statute gives to adjoining owners. For these reasons, it is our conclusion that plaintiff has not shown himself entitled to recover. Other questions are argued; but, because the point last mentioned is decisive of the case, we ought not to prolong the opinion to discuss at any length the other questions.

4. We shall notice in a brief manner only, some of the other points. One is that the plumbing company was the first party to use the new wall erected by plaintiff as a wall in common, and that this is so whether the

6. PARTY WALLS: contribution: initial liability: lessees.

plumbing company was the owner of the building No. 716 or was only the holder of it, as lessee of the defendants; and, being the first user, it, and it alone, if anyone, became liable for contribution to the plaintiff. This contention of appellees' is presented subject to the proposition discussed in the preceding paragraph of the opinion. The argument is that there is no provision in the statute which makes any person liable for

contribution to a party wall prior to the time he uses it.   And that, under the circumstances here shown, according to the holdings of this court, the one half of a dividing wall, not exceeding eighteen inches in thickness above the cellar, which rests upon an adjoining lot, is not an incumbrance upon the adjoining lot.   Neither is the duty to contribute to the cost of such a wall a lien or charge upon the adjoining lot.   However, it is something which "runs with the land," and becomes a personal liability of the first person who uses the wall in a substantial, permanent way, as a wall of an adjacent building. *Thompson v. Curtis,* 28 Iowa 229; *Bertram v. Curtis,* 31 Iowa 46; *Beggs v. Duling,* 102 Iowa 13; *Capital City Inv. Co. v. Burnham,* 143 Iowa 134, 147.

The liability to contribute to the cost of a party wall becomes enforceable against, and is a personal liability of, the first person who uses the wall, whether he be the original coproprietor of the adjoining lot or his grantee.   But where the adjoining lot is held by a lessee of the original owner or his grantee, who is the first person who uses the wall, there is no liability on the part of the lessor, who has made no use of it, either to pay to the one who erected the wall, or to reimburse his lessee, who first availed himself of it.   The lessee and he alone is liable (*Percival v. Colonial Inv. Co.,* 140 Iowa 275), and they suggest:

"Supposing the lessee of a long-time lease of a vacant city lot, on the side lines of which great party walls have already been erected, constructs a building on his lot, using his neighbors' walls in its construction; can anyone be found to say that his lessor must pay for the walls?   The neighbors might by injunction prevent the lessee from building into their walls until payment has been made or secured (Code § 3002, and *Crapo v. Cameron,* 61 Iowa 447); but if once they permitted such a proceeding without payment or the giving of security, their only remedy would be a suit at law against the man who utilized their walls and made them *de*

*facto* walls in common. But we inquire, by what principle, law, or authority could liability therefor be cast upon the landlord?''

We are inclined to this view, but deem it unnecessary to determine this point. We may observe here that, while the old wall which was removed by plaintiff was in a sense permanent, and the new wall is so, the use of the new wall by defendants' tenants for a time was not more than or different from their use of the old wall, nor is defendants' use thereof more than or different from that of their tenants. It will be remembered that there is no basement under defendants' building on No. 716, and their building is an old one. They may, sometime in the future, desire to build a new building with a basement. When that time comes, and if defendant should make different use of the wall in question, a question may arise which manifestly ought not to be now determined.

We may add, too, that it is clear that, up to the time the plumbing company's lease expired, there was no liability to plaintiff from defendants for contribution. Suppose a lease of the plumbing company had run 10 years longer, or, say, until 1920; it is clear that there would be no liability for contribution to plaintiff by defendants until then. So that, under the record in this case, the fact that the lease of the plumbing company expired in 1910, and they then vacated the building, does not alter the situation.

5. It is also contended by appellees that all liability for contribution for that portion of the wall built by plaintiff and now used by defendants as their west wall, if any there was, was adjusted, settled and discharged by the written contract of July 12, 1909, between plaintiff and defendants' lessee, the plumbing company, which contract was thereafter fully executed and performed, and that plaintiff is not entitled to be paid twice for the same thing. This involves a construction of that contract, and we do not feel warranted in consuming further time to discuss that proposition, because other points already decided determine the case, and this is true as to some

other points argued. It is our conclusion that the judgment of the district court is right, and it is therefore—*Affirmed.*

EVANS, C. J., DEEMER and WEAVER, JJ., concur.